INEZ COLOMBA RINALDI, by her next friend, Morris Roncoroni, petitioner,

*v.*

PFTER RINALDI, defendant.

[Decided October 18th, 1922.]

1. Upon marriage, the domicile of the wife merges into that of the husband, as a legal sequence of the nuptial contract, and this unity of domicile, called the matrimonial domicile, exists during coverture, unless the wife acquires one elsewhere by the husband's consent manifested by acquiescence, or abandonment, or by such conduct on his part inimical to cohabitation, as would secure to the wife a decree of divorce *a vinculo matrimonii* or *a mensa et thoro.*

2. A wife whose matrimonial domicile is in another state may come into this state and acquire a separate domicile here, when she has been so offended against by her husband as to entitle her to a decree of divorce or judicial separation from him for and on account of such conduct, the only requirements being absolute good faith in the taking up of such residence and an intention to remain here.

3. No length of residence without intention to remain will constitute domicile.

4. When a change of residence is effected the question as to whether the newly-acquired one is to be the party's legal domicile depends upon both fact and intention; the best evidence of *intention* being ascertained from the party's declarations, which are always available in a suit for divorce or nullity of marriage because the parties are alive.

5. The domicile of a legitimate unemancipated minor is, if its father be alive, the domicile of the latter, but the marriage of a female minor emancipates her.

6. The residence required by our statute to give this court jurisdiction to grant a divorce or annul a marriage, means fixed domicile or permanent home as distinguished from mere residence.

7. The court of its own motion and in the interest of justice will sometimes permit the taking of further testimony to legally establish what has been insufficientlly proved.

On final hearing on master's report and depositions *ex parte.*

*Messrs. Smith & Brady,* for the petitioner.

WALKER, CHANCELLOR.

Our statute conferring jurisdiction of causes for the purpose of annulment of marriage provides that jurisdiction may be acquired (1) by personal service of process upon the defendant within this state, when either party is a *bona fide* resident here at the time of the commencement of the action, or (2) when the defendant cannot be served personally with process within this state, and when at the time of the commencement of the action the petitioner is a *bona fide* resident here, jurisdiction may be acquired by publication to be followed where practicable by service upon, or notice to, the defendant without this state, &c. *P. L. 1907 p. 474 § 5 subdivs. 1, 2.*

On examining this case on the master's report and depositions annexed, I filed a memorandum in which I recited that the parties were married February 23d, 1917, at Syracuse, New York, when the petitioner was twelve years, eight months and five days old; that they have not cohabited since March 17th, 1917, when, on the latter date, petitioner left the

defendant and went to the home of her brother in Phillips-burg, in this state, where she has lived ever since; and I cited *Jimenez* v. *Jimenez, 93 N. J. Eq. 257,* in which I held that a marriage as to its dissolution is governed by the *lex domicilii,* and that this applies to nullity suits as well; that here, as there, the petitioner claims to be domiciled in New Jersey, and invokes the jurisdiction of our court, but that there may be an impediment to the granting of the decree, for the proofs show that the defendant is a resident of the State of New York, where the parties were married and lived through the brief period of their cohabitation; and the question arises, Can this wife, by deserting her husband in that state, come here and obtain a domicile for the purpose of bringing a nullity suit? *Jimenez* v. *Jimenez, supra.* The desertion here referred to means leaving, and the word is not used in a technical sense. I concluded my memorandum with the statement that counsel might be heard orally or on briefs upon the question of residence.

In pursuance of the leave thus given counsel for petitioner appeared before me and argued the reserved question, citing *Avakian* v. *Avakian, 69 N. J. Eq. 89,* as authority to the effect that the petitioner is domiciled in New Jersey and has the requisite residential status to maintain this suit. In that case Vice-Chancellor Pitney observed (at *p. 99*): "The notion that the domicile of the wife follows that of her husband has little or no practical application to suits between husband and wife, since if the wife was justified in leaving her husband she thereby became entitled to adopt a new domicile, and if she was not justified she will fail in her suit on the merits."

*Avakian* v. *Avakian, supra,* is also an authority that this court has power to annul a marriage solemnized in another jurisdiction and when the cause for action arose in a foreign state.

In order, apparently, to lay a foundation for the obtaining of a *bona fide* residence in this state by the petitioner upon her actual desertion of her husband, counsel has filed an affidavit of the petitioner, in which she says that prior to her

marriage she was in good health, robust and strong for a girl of her age (twelve years); that her experience on the first night of her married life was such that she incurred a feeling of fear of the defendant, and from that time on she never had intercourse—meaning, of course, sexual intercourse—with him of her own free will and consent, and on each occasion thereafter when they had intercourse she complained of pain and suffering that she underwent, and begged the defendant not to try to have intercourse with her; that her health failed and it was necessary to call in a doctor to treat her; that he told her that she was very nervous and that her condition was such that she should go to bed and remain there; that she remained in bed for about one and a half weeks, or up to the very day she was taken from her husband's home by her father, whom she begged to take her away from the defendant, saying if her father did not take her she would run away, because she could not stand that life any longer.

This affidavit is intended as a showing that the wife was justified in leaving her husband. That may be so. In *English* v. *English, 27 N. J. Eq. 579,* upon bill for divorce *a mensa et thoro,* on the ground of extreme cruelty, consisting mainly in gross abuse by the defendant of his marital rights in insisting on having intercourse with his wife against her entreaties and expression of apprehension that it would be fatal to her, she being kept awake many nights by the pain she suffered during and after intercourse, Chancellor Runyon decreed a divorce from bed and board forever, *ante p. 74.* The court of errors and appeals in reversing the decree said that the action of that court was not based upon any approval of the acts of the husband of which his wife complained, nor upon his requests for her return, nor upon any formal security that he could offer for his future good behavior, and held that a divorce *a mensa et thoro* will be granted where there is gross abuse of marital rights.

Vice-Chancellor Pitney in his assertion in *Avakian* v. *Avakian* that a wife could acquire a domicile independent of that of her husband, *if she is justified in leaving him,* could not have meant she could leave him for any cause sufficient

unto herself not affording legal justification. The fact in the case before him was that a marriage contract between a girl fourteen years of age with a man fifty-five years old, in the circumstances recited, was procured through duress by the man practiced on the girl. This, of course, was an offence which justified her leaving.

*In re Geiser's Will, 82 N. J. Eq. 311,* I held, as ordinary (at *p. 313*), that upon marriage the legal domicile of the wife merges into that of the husband as a legal sequence of the nuptial contract, and the unity of domicile exists during coverture, unless the wife acquires one elsewhere by the husband's consent. That consent may be either actual or constructive, and may be manifested by acquiescence, by abandonment or by such conduct inimical to cohabitation as would secure to the wife a decree of divorce *a vinculo* or *a mensa et thoro.*

In *Suydam* v. *Suydam, 79 N. J. Eq. 144,* I held, when vice-chancellor, that if a husband be guilty of conduct amounting to a matrimonial offence that would constitute ground for divorce, his wife is justified in leaving him and the desertion thereby becomes his.

In *Rogers* v. *Rogers, 81 N. J. Eq. 479,* the court of errors and appeals held that desertion is justified only when the deserting party has been so offended against as to authorize at his or her instance a decree of divorce or judicial separation

In *Thompson* v. *Thompson, 89 N. J. Eq. 70* (at *p. 77*), Vice-Chancellor Backes held that in legal contemplation the husband's domicile is that of the wife, and unchangeable by her, except with his acquiescence or consent or for misconduct on his part, inimical to the union, as justified her in selecting another, citing, among other authorities, *In re Geiser's Will, supra,* and *Tracy* v. *Tracy, 62 N. J. Eq. 807.* And the vice-chancellor observed that whether there was justification for a wife's leaving is purely a question of fact to be passed upon by the trial court in determining whether a separate domicile has been acquired. In the latter case (*Tracy* v. *Tracy*) the court of errors and appeals held (at *p. 810*) that *a feme covert's* residence follows that of her husband, but terminates

with the reasons upon which it rests, and when the union between the two ceases and an attitude of hostility arises they may each have different residences. This holding was, of course, based upon the facts of the *Tracy Case,* which were that the husband deserted his wife in the State of New York, where they were then residing, after which she came to this state and acquired a residence as is required by the statute to entitle her to a divorce.

From the above authorities it clearly appears, I think, that a cause sufficient to justify a wife in leaving the matrimonial domicile of her husband and herself and acquiring an independent domicile of her own, is such cause only as would entitle her to a decree of divorce or a judicial separation from him under the statute.

In *Wallace* v. *Wallace, 65 N. J. Eq. 359,* Judge Vroom, speaking for the court of errors and appeals (at *p. 364*), said: "I concur entirely in the principle laid down by the special master in this case that a person may legitimately move to another state in order to avail himself of the laws of that state, and this includes, necessarily, the right to remove into the jurisdiction of this state for the purpose of procuring a divorce, the only requirements being absolute good faith in the taking up of such residence and of the *animus manendi;* in other words, the *factum* of residence and the *animus manendi* proves the domicile. *Magowan* v. *Magowan, 12 Dick. Ch. Rep. 324; Harral* v. *Harral, 12 Stew. Eq. 285."* This, of course, presupposes the right to acquire a new domicile.

The doctrine of *Wallace* v. *Wallace,* without more, would make a perfect case of domicile for the petitioner before me, but, it must be remembered, that decisions are rendered with reference to the facts of the particular cases under consideration; and in this *Wallace Case* the petitioner was deserted by her husband. That disrupted the matrimonial domicile, and she had the right, under the cases, to acquire a new one for herself. And in the *Wallace Case* the opinion concludes: "The proofs in this case, showing that the residence of the complainant was acquired with the *animus manendi,* and

that she is corroborated by satisfactory evidence as to her intention to remain permanently in New Jersey, the avowal on her part that her object in moving into the state was to obtain a divorce cannot effect the *bona fides* of her residence or her right to a divorce under the provisions of our statute."

In the instant case there is sufficient corroboration of the petitioner's actual residence in New Jersey for the last five years, but there is no declaration by her that she has had the intention of making, and continuing to make, it her permanent home; and, for aught we know, she may intend the very reverse.

In *Firth* v. *Firth, 50 N. J. Eq. 137,* it was held by Vice-Chancellor Van Fleet: "The actual intention of the person whose domicile in dispute is in most cases a fact of great importance, but the best and most trustworthy evidence of it is found, as a general rule, in his acts rather than in his declarations." See, also, *Stout* v. *Leonard, 37 N. J. Law 492, 496.* And no length of residence without intention of remaining will constitute domicile. *Ibid. 495.*

From the foregoing it appears that when a change of residence is effected the question as to whether the newly-acquired one is to be the party's legal domicile is a question which depends upon both fact and intention. The best evidence of *intention* is to be ascertained from the party's declarations, which are always available in a suit for divorce or nullity because the parties are alive.

The case at bar differs from that of *Blumenthal* v. *Tannenholz, 31 N. J. Eq. 194,* where it was held that the domicile of a legitimate unemancipated minor is, if his father be living, the domicile of the latter; that an infant, whose parents resided in Canada, who filed a bill to annul her marriage on the ground of fraud, her husband being domiciled elsewhere, was incapable of changing her own domicile, and that consequently the court had no jurisdiction. But Vice-Chancellor Pitney in *Avakian* v. *Avakian, supra* (at *p. 98*), said that that case was distinguished from *Blumenthal* v. *Tannenholz.* in that in the *Avakian Case* the petitioner was placed by her father, who lived in Armenia, in the hands of a man to be

escorted to the home of her aunt in Hoboken, New Jersey, according to the petitioner's own account, and to be married to a man in New Jersey, according to the account of her escort; that in either case New Jersey was to be her home, and that it follows that she did by her father's command change her domicile to New Jersey, which was true whether her story as to the object of her journey or that of her escort be accepted. The father of the petitioner, in the case before me, with her brother and sister, actually took her to the residence of her brother in this state and left her there to live, and has apparently abandoned her ever since. While this might of itself emancipate her, still she was already emancipated because she was a married woman; and the marriage of a female minor emancipates her. See *1 Bish. M., D. & S.* § *557.* Even when an infant, emancipated by marriage, becomes a widow before reaching the age of maturity, she does not relapse into pupilage. *22 Cyc. 518, tit. "Pupil,"* inter alia, one who has not reached his or her majority. *2 Bouv. Law Dic. (Rawle's rev.) 796.*

In *Hess* v. *Kimble, 79 N. J. Eq. 454,* Vice-Chancellor Leaming held, *inter alia,* that the term "residence," as used in our Divorce and Annulment act of 1907, includes not only the *factum* of residence but also the *animus manendi,* the residence required by the statute being equivalent to domicile; that the domicile of a legitimate unemancipated minor, whose will cannot concur with the fact of residence is, if his father be living, the domicile of the father; that a minor cannot change his domicile of his own will; and that the burden of proof to establish a ·change of domicile on the part of a minor is on him. In *Coddington* v. *Coddington, 20 N. J. Eq. 263,* Chancellor Zabriskie held that the residence required by the statute concerning divorces to give the court jurisdiction, means fixed domicile or permanent home.

The defendant was not served with process within this state, but was brought in by publication and mailing of certified copies of the order of publication and petition for annulment. He was therefore notified that the petitioner alleged that she was a *bona fide* resident of this state at the time of

the commencement of his suit, having her permanent residence at, &c., continuously, &c. He did not answer, but defaulted in pleading, and this entitled the petitioner to proceed *ex parte,* which she had done. To prove her residence in this state she is entitled to show that the defendant committed a marital offence against her entitling her to a decree of divorce *a mensa et thoro* for extreme cruelty, or for a divorce *a vinculo matrimonii* for desertion—constructive desertion—they having been separated for more. than two years 'and she having lived here during all the time of the separation. See *Csanyi* v. *Csanyi, 93 N. J. Eq. 11.* But the petitioner has not sufficiently proved her residence—that is, domicile, in this state. The affidavit which she has filed setting out the alleged cruelty of her husband cannot be accepted as proof of the fact; besides, her intention to make New Jersey her permanent residence does not appear, only the fact of her residence is shown. In the recent case of *Ysern* v. *Horter,* opinion filed September 7th, 1922, *94 N. J. Eq. 135,* former Vice-Chancellor Stevenson, now advisory master, said that the court was asked to accept merely the *ex parte* affidavit of the petitioner to establish the important fact that the presumptive ratification of a voidable marriage is inoperative on account of duress; that the fact of duress must be established in court, where witnesses can be cross-examined by counsel or by the court, or, as that was an *ex parte* case originally, by the master upon a re-reference of the case back to him.

The court, of its own motion and in the interest of justice, will sometimes permit the taking of further testimony to legally establish what has been insufficiently proved. *Kirschbaum* v. *Kirschbaum, 92 N. J. Eq. 7, 12.*

The petitioner may have an order re-referring the cause to the special master, with leave to take further testimony to prove residence (legal domicile) in New Jersey in accordance with the tests laid down in this opinion, if she so desires, and moves therefor within thirty days; otherwise her petition will be dismissed.