In the matter of the transfer inheritance tax upon the estate of CHARLES F. DELLINGER, late of the city of New York.

[Decided February 15th, 1923.]

1. In interpreting the so-called "ratio tax" clause of the Transfer Inheritance Tax act (*P. L. 1909 ch. 228*, and amendments) regard must be had for the general scheme of the statute as a whole.

2. The statute provides for a tax which, although imposed upon the immediate transfer or succession from the decedent or transferor, is measured by, or computed as. to amount upon, the value of the property ultimately passing to the beneficiaries.

3. The ratio tax clause in providing for a tax upon the transfer of the New Jersey property of a non-resident decedent, involves the same intent that it shall be measured by the value of the amount of the New Jersey property ultimately passing to the beneficiaries.

4. The "New Jersey property," and the "entire estate" which are specified as factors in the proportion prescribed by this clause mean, respectively, "the value of the portion of decedent's New Jersey assets which ultimately passes to the beneficiaries" and "the value of the portion of decedent's entire assets which ultimately passes to the beneficiaries."

5. To ascertain the value of the portion of decedent's New Jersey assets which ultimately passes to the beneficiaries, there must be deducted from the total value of such assets such sum as represents the amount by which, in legal contemplation, those assets will be diminished before they shall be receivable by the beneficiaries.

3. The principles involved in the ascertainment and determination of the amount so to be deducted.

Transfer inheritance tax appeal.   On final hearing.

*Mr. William Byrd,* for the appellant, executor.

*Mr. William Newcorn,* assistant attorney-general, for the state.

BUCHANAN, VICE-ORDINARY.

The executor of the estate of Charles F. Dellinger, deceased, appeals from the so-called transfer inheritance tax assessed against that estate by the comptroller.   Appellant's testator

died March 20th, 1922, a non-resident of New Jersey, but having amongst his personal property certain stocks of New Jersey corporations, the transfer whereof is made taxable under our statute. *P. L. 1909, p. 325,* and subsequent amendments.

Admittedly the estate is subject to tax under the so-called "ratio clause" of the act, the last paragraph of section 12, which read as follows:

> "A tax shall be assessed on the transfer of property made subject to tax as aforesaid in this state of a non-resident decedent if all or any part of the estate of such decedent wherever situated shall pass to persons or corporations taxable under this act, which tax shall bear the same ratio to the entire tax which the said estate would have been subject to under this act if such non-resident decedent had been a resident of this state, and all his property, real and personal, had been located within this state, as such taxable property within this state bears to the entire estate wherever situated; provided, that nothing in this clause contained shall apply to any specific bequest or devise of any property in this state."

Adopting for the sake of convenience briefer (and therefore inexact) designations to represent the several members of the proportion set forth by the statute, the statutory proportion may be expressed thus:

$$\frac{\text{Tax to be levied}}{\text{Tax on entire estate}} = \frac{\text{New Jersey property}}{\text{Entire estate}}$$

and it is obvious that the performance of the mathematical operations indicated by the following formula:

$$\frac{\text{New Jersey property}}{\text{Entire estate}} \times \text{Tax on entire estate}$$

gives as the result the amount of tax to be levied.

In other words, the tax imposed is a certain fraction of the hypothetical tax on the entire estate, which fraction has for its numerator the amount of the New Jersey property, and

for its denominator the entire estate. In practice, this fraction is reduced to a decimal before applying it to the hypothetical "entire tax."

This method was followed by the comptroller. In doing so, however, he took as the figure for the "entire estate," the *net* value of decedent's total estate, after deducting the total debts and administration expenses, while as the figure for the "New Jersey property," he took the *gross* value of the New Jersey property without any deduction whatsoever; whereas he should have deducted, appellant contends, a proportionate share of the total debts and administration expenses, to wit, such part thereof as is equal to the ratio between the gross New Jersey property and the gross entire estate; or else, as an alternative contention, he should have taken as the figure for the "entire estate" the gross value of decedent's total estate without any deduction. (The actual result under each of these contentions would be identical.)

This is the only controversy involved in this appeal. The determination thereof is a question of interpretation of the statute, since the legislative phraseology is not definitively explicit. Reference to the particular paragraph of the act (quoted *supra*) discloses that that member of the proportion which was hereinabove briefly designated as "entire estate," is therein described as decedent's "entire estate, wherever situated." Nothing is said about "gross" or "net," or the making of any deduction; and the same thing is true as to the member of the proportion which we have termed briefly "New Jersey property," and which is described by the statute as decedent's "taxable property within this state." There is no express differentiation or discrimination in this behalf to be found in the legislative language as between these two members of the proportion.

It will be noted that the description of the third member of the proportion is qualified by the word "such"—"*such* taxable property within this state." That to which this word "such" refers, the only thing to which it can refer, is evidently the phrase "property made subject to tax as aforesaid in this state," which appears near the beginning of the paragraph.

In this phrase again, by the words "as aforesaid," we are referred to something still further antecedent, and the quest to locate it takes us all the way back to the beginning of the statute.

Section 1 of the act is the only section (except this ratio clause which was *not* originally in the statute) which imposes any tax, or makes anything taxable. It imposes a tax upon "the *transfer* of any property," &c., in certain cases, including (subsection second) transfer, by will or intestate law, of certain kinds of property within this state, of a non-resident decedent, and (subsections third, fourth and fifth) certain other transfers of New Jersey property from non-resident decedents. All these transfers of New Jersey property of non-resident decedents would be taxed under, and at the rates specified in, this section 1, if the "ratio clause" had not been added to the statute. It is of course these taxes and these transfers and this property, mentioned in section 1, to which the "ratio clause" refers.

The tax imposed by this section 1 is not a tax on *property* but on the *transfer* of property, the amount of the tax on the transfer being calculated on the value of the property transferred. *Carr* v. *Edwards, 84 N. J. Law 667; MacMiller* v. *Bugbee, 115 Atl. Rep. 341.* Likewise, obviously, the tax provided in the "ratio clause" must be a tax on transfers of the same kind, not a tax on the *property* in this state of the non-resident decedent. And indeed the wording of this "ratio clause" is so expressed—"a tax on the transfer of property made subject to tax as aforesaid," &c. The words "as aforesaid" must have been intended to qualify the word "transfer" rather than the word "property," because by the preceding portion of the statute no *property* has been "made subject to tax," but *transfers* of property have been.

In consequence, when we come to consider the words "such taxable property within this state," farther down in this ratio tax paragraph, we must necessarily conclude that the words "taxable property" have been used carelessly or with inexactitude, for there is no prior mention in the paragraph of any taxable property. The legislature evidently used these words

as a short way of saying, and they therefore must be deemed to mean, "such property within this state the transfer whereof has been hereinbefore made taxable." There are a number of other instances throughout the statute of a similar confusion of language referring to the property, instead of the transfer thereof, as the thing taxed. They are readily discoverable and I will not take the time to point out all of them; it will suffice to cite the instance in the last paragraph of section 1, where it is stated that "property" passing to the state, &c., "shall be exempt from taxation under this act," and that "property" passing to certain charities and certain relatives of decedent "shall be taxed" at a certain rate, and so on.

The "transfer" (from non-resident decedent), which is mentioned in and made taxable by section 1, and therefore also by the "ratio clause," includes every transfer which this state has the power to tax, from a decedent to his successors. *Carr* v. *Edwards, 84 N. J. Law 667* (at *p. 668*). As to New Jersey real estate, it includes the succession of the devisee and of the heir-at-law, both of whom derive from our law their right to take title to such property. As to the personal property in this state, it includes not the succession of the legatee or distributee (for they derive their rights from the law of decedent's ·foreign domicile), but the transfer of title from the decedent to his domiciliary executor or administrator (or to the New Jersey ancillary administrator, if one be appointed), for that transfer is the creature of, and controlled by, the law of this state. *Carr* v. *Edwards, supra.* *Cf.,* also, *Neilson* v. *Russell, 76 N. J. Law 655* (at *p. 659*).

The tax which was before the court in *Carr* v. *Edwards* was one imposed solely under the "ratio clause," as the record in the case discloses. The language of that clause was then different from its present form. It reads (see *P. L. 1909 p. 332*): "Such *property* located in this state shall be subject to a tax," &c.

The amendment of that part of its language to its present form (*P. L. 1914 p. 96; Ibid. p..273*), apparently was done for clarification of the wording to accord with the intent, and proves that the legislative intent was precisely what the court

had, in *Carr* v. *Edwards*, held it to be. The other changes of
language by the amendment of *P. L. 1914 p. 96*, were obviously
because of the decision in *Beers* v. *Edwards, 84 N. J. Law 32*,
and pursuant to the intimation in the opinion in that case.

The tax, then, which is imposed by this "ratio clause," as
well as that imposed by section 1 of the act, is upon the
*transfer;* the *amount* of that tax is determined by the value
of the property transferred or passing. What is the property
transferred or passing?

The whole scheme and intent of the statute seems to be that
the *measure* of the taxes which are imposed by it shall be the
value not of that property which is the subject of the technical
transfer upon which the tax is levied, but of that portion
thereof which passes to the ultimate respective beneficiaries.
This is particularly evident in the last paragraph of section
1, above referred to, wherein it is provided that "property
passing" to so and so shall be exempt or be taxed at certain
rates. The distinction, and the significance thereof, between
the meaning of a "transfer" and a "passing" of property is
pointed out in *Carr* v. *Edwards, supra* (at *p. 670*) ; and the
language used there: "This determination of the rate of taxa-
tion by the ultimate beneficial succession to the property,
* * * ," would seem to indicate quite clearly that the
court of errors and appeals conceived that that property, the
value whereof was to be the measure of the tax, was the prop-
erty ultimately passing to, or receivable by, the ultimate bene-
ficiary. It is worthy of observation that by the language of
this ratio tax clause itself, no tax can be imposed under its
provisions unless there is property passing to an ultimate
beneficiary who is not exempt from paying tax for such trans-
fer. The tax on the *transfer* is to be assessed *if* (and only if)
"all or any part of the estate of such decedent, wherever
situated, *shall pass* to persons or corporations taxable under
this act," *i. e.*, persons not included within the exempt class
in the last paragraph of section 1; which exempt class was
originally much larger than it now is under the later amend-
ments.

The same conclusion is reached, on consideration of the design of the statute that the respective taxes on the several transfers shall be paid by the respective recipients of the property transferred, or out of the property transferred (see *Parrot* v. *Rogers, 86 N. J. Eq. 311,* and *In re Diehl, 88 N. J. Eq. 310*), and from the fact that the *rates* specified by the statute for the calculation of the tax, vary with the identity of classification of the respective persons who receive as ultimate beneficiaries the several portions of the estate. We may go back, indeed, to the original, general, basic idea and theory of these transfer tax acts, including our own. They were thought of and called "collateral inheritance tax" statutes; the original intention (modified more and more in later years) was to tax the "collateral" kindred of the decedent, not his immediate kin or direct descendants. See section 1 of the act of 1894 as originally passed. The idea, of course, was that persons who took property from a decedent did so by grace and virtue of the laws of the state and not by any inherent right; that distant relatives had much less of a meritorious "claim" upon the assets of the decedent; and that an opportunity therefore existed for the state to derive revenue by collecting a tax or a toll out of such property as might be received from a decedent's estate by others than his immediate kin or descendants.

So, in *Neilson* v. *Russell, 76 N. J. Law 655* (at *p. 657*), the court of errors and appeals says:

"Although there seems to be no provision in the statute authorizing the deduction of debts in making the appraisement, we can hardly doubt, in the face of section 10, that such a deduction ought to be made. It has never been thought that an insolvent estate was liable to this tax, although no machinery can be provided in this state by which the fact of solvency or insolvency can be ascertained. Such machinery is unnecessary if it is only the value of the legacy that is to be ascertained. These considerations persuade us that it is the legacy that is taxed and not the estate."

Mr. Justice Swayze was there dealing with the case of a non-resident decedent under the act of 1894, which at that

time did not contain the ratio tax clause. The changes which were made in the statute because of the decision in that case, however, were changes which may be said to have had the sole design of correcting the statute so that it might legally be valid and sufficient to accomplish the legislative purpose. That purpose, and the general basic idea of the legislation, remains to-day as it was in the original act.

Again, in *Bugbee* v. *Roebling, 94 N. J. Law 438,* the court of errors and appeals, dealing with the statute after the changes of 1914, says (at *p. 442*) : "We think these provisions indicate that the tax is to be calculated on the beneficial interest actually received by the legatee and not on what he would receive if there were no federal tax." The tax then under consideration was not under the ratio clause, but, as already pointed out, the language of the ratio clause refers back to the prior tax-imposing section, and the legislative intent and meaning is the same.

It may therefore, I think, accurately be said that the legislative design is to collect in all instances a tax computed on the value of the property received by the decedent's beneficiaries, and on nothing else; although (for reasons of legal expediency or necessity) the tax is in legal form and contemplation actually imposed, in some instances, on a transfer which is antecedent to, and inclusive of a greater amount of property than, the transfer whereof the ultimate beneficiary is the transferee. This being the general design, it is, of course, to be read into the "ratio clause," unless there be found some indication to the contrary, either express or implied. None such is apparent to me.

I do not recall that there has ever been any doubt—at any rate since the opinion in *Neilson* v. *Russell, supra* (see the excerpt above quoted)—that in the calculation of the tax under section 1 the debts of decedent and administration expenses were to be deducted from the assets in arriving at the estate or property upon the value of which the tax was to be computed. To those there is added, by the decision in *Bugbee* v. *Roebling, supra,* as likewise deductible in such a case, the amount of the federal estate tax. And the legislature has

now, by the amendment of 1922 (*P. L. 1922, ch. 174*), added, in the next to the last paragraph of section 1 of the act, a specific provision for, and a list of, such deductions; these include debts, funeral  *  *  *  and administration expenses, including commissions and attorney's fees, a proportion of property taxes accrued but not due and the federal estate tax. In every calculation of the tax under section 1, therefore, the comptroller must start with the preliminary fact that the assets, the proper appraised value whereof he is to fix and thereon to compute the tax, have been diminished to the extent necessary to satisfy these deductible items or charges against the estate.

Now, let us turn again to the ratio clause, and the language therein as to the "entire tax" member of the proportion: "The entire tax which the said estate would have been subject to under this act if such non-resident decedent had been a resident of this state, and all his property, real and personal, had been located in this state."

This "entire tax" is necessarily to be calculated upon the value of an "entire estate." I think it is perfectly clear that such "entire estate," in view of the prescribed hypothetical conditions, is to be the total assets of decedent, diminished by the deductions above mentioned. I think it is also clear that precisely the same thing is meant by the "entire estate wherever situated," which is specified as the fourth member of the statutory proportion. It has in fact been heretofore decided that in determining the sum to be taken as the amount or value of the "entire estate," both as the fourth member of the proportion and as a factor in the determination of the "entire tax" member, there must be subtracted from decedent's assets the aforesaid deductions; this by two independent, contemporaneous decisions—*MacMiller* v. *Bugbee, 115 Atl. Rep. 341; In re Kountze, 115 Atl. Rep. 93* (affirmed on *certiorari*, February term, 1922, *sub nom. Bugbee* v. *Kountze,* but not reported), except that of course at the date of these decisions the 1922 amendment of the next to the last paragraph of section 1 had not been·enacted.

Coming now to the third member of the proportion—the New Jersey property—since the general design of the statute is to collect tax only on the value of the property actually received by the beneficiaries, and this design is inherent also in this ratio clause; and since the tax by this clause imposed in respect of the New Jersey property is a fractional part of a hypothetical tax on an entire estate determined after deducting debts and other expenses from decedent's total assets; and since in the statutory proportion the New Jersey property is placed in ratio with an entire estate similarly determined after such deductions, it seems to me there can be no logical doubt that the figure to be taken for this third member is to be the value of the New Jersey assets diminished by their proper share of the total debts and expenses.

It appeared to be the impression of counsel, upon the argument, that *MacMiller* v. *Bugbee, supra,* and *In re Kountze, supra,* were authority against deducting from the New Jersey property anything other than special pledge debts (and, of course, the New Jersey property, if any, specifically devised or bequeathed). Certainly, *In re Kountze* affords not the slightest ground for that impression; no such issue was raised or considered in that case, and no such expression or implication is to be found in the opinion; neither, in my opinion, does the *MacMiller Case,* although a colorable argument might be made to the contrary. This issue was not before the court in that case; of the alleged errors specified by the reasons on *certiorari* only one relates to the "New Jersey property" member of the statutory proportion, and that one has to do only with the propriety of the comptroller's method of ascertaining the value of decedent's interest in the pledged New Jersey stocks. The whole of the opinion is in line with the conclusions which I have reached in this case, and the court there actually says: "It is manifestly fair to deduct the debts in ascertaining the value of the New Jersey property." It is true that that language probably has reference to the special pledge debts which the court had under consideration; *non constat,* however, that the pronouncement would have been otherwise if the court had had other debts in mind.

Indeed, it may be pointed out that the deduction of special pledge debts from the value of the securities pledged therefor is not strictly a deduction of debts from decedent's assets. Not the pledged securities themselves but only an interest or equity of redemption therein are assets of the decedent's estate. *Cf. Security Trust Co.* v. *Edwards, 90 N. J. Law 558.*

The conclusion reached, of course, leads to the setting aside of the tax assessed in the present case. It does not, however, lead to the acceptance of appellant's primary or first contention, *i. e.,* that the amount to be deducted from the value of the New Jersey assets is that figure which bears the same ratio to the total amount of the debts and expenses that the New Jersey property bears to the total assets. (Appellant's second or alternative contention is of course negatived by the decisions in *MacMiller* v. *Bugbee, supra,* and *In re Kountze, supra.*) The amount to be deducted from the value of the New Jersey assets is that sum by which those assets will be diminished, in legal contemplation, prior to their reaching the hand of the ultimate beneficiaries.

The same sovereign jurisdiction and control over all assets within its borders which gives this state the right to levy the taxes under this statute, gives it the right to determine and provide what disposition shall be made of assets in this state, on the death of the owner thereof, whether that owner's domicile be in this state or a foreign state. By comity this state has adopted as the law of this state that in the case of a non-resident decedent his assets in this state, so far as they are not required for the payment of his creditors, shall be distributed according to the law of the decedent's domicile. This distribution may be made by the ancillary administrator in this state, if there be one, or the ancillary administrator may transmit the balance to the domiciliary administrator for distribution. If the balance in this state, after the payment of creditors in this state, should be needed to pay creditors at the domicile, it would be transmitted to the domiciliary administrator. But the duty of the person who administers the assets in this state is to collect such assets and out of them to pay

the creditors in this state. The administration of the assets of a decedent, as to creditors, is controlled and governed by and according to the law of the state where such assets are situate. See *Varnum* v. *Camp, 13 N. J. Law 326; Banta* v. *Moore, 15 N. J. Eq. 97; Normand's Executor* v. *Grognard, 17 N. J. Eq. 425; Pisano* v. *Shanley Co., 66 N. J. Law 1* (at p. 7); *Westl. Priv. Int. Law (3d ed.)* § 110. Cf., also, *Wall* v. *American Smelting Co., 91 N. J. Eq. 131.*

It is, I take it, immaterial that in the case of a non-resident decedent with assets in this state, local administration may not be (and, indeed, probably only infrequently is) applied for or granted in this state; that it is not or may not be required; and that when not granted the domiciliary administrator has title to the assets here. *Re Cape May Navigation Co., 51 N. J. Law 78; Neilson* v. *Russell, 76 N. J. Law 655* (at p. 659). It is within the power of those persons interested in the estate in New Jersey to force local administration here—section 29, Orphans Court act—and it can never be certain that the domiciliary administrator can administer without taking out local letters. When local administration be taken out, if subsequent to the grant of letters at the domicile, the title of the domiciliary administrator is divested in favor of the local administrator. The material point is that it is the duty of the person who administers the assets in this state, whether that person be the domiciliary administrator or an administrator appointed here, to collect the local assets and out of them to pay the local creditors, before either distributing the balance to beneficiaries or transmitting it to the domicile to pay other debts there.

It would seem that a modification of, or exception to, this rule may exist in the case of insolvent estates. *2 Schoul. Wills, tit. "Executors and Administrators" (5th ed.)* § *1015a*); *24 C. J. 1125.* But even so, the relaxation or modification affects only the claims of general creditors; it does not extend to deprive preferred local creditors of payment in full out of the local assets. *Smith* v. *Union Bank, 30 U. S. 518; 1 Wms. Exrs. (10th ed.) 754;* and whether such modification exists in this state need not be considered, because in

the case of an insolvent estate no tax would be assessable, as we have seen, since nothing would pass to any beneficiary.

In the simplest case, then, that of intestacy, and involving assets and creditors only in the state of the domicile and in this state, and the assets in each state exceeding the debts due citizens of that state, it would seem that the proper deduction to be made from the total New Jersey assets in order to obtain the figure for the numerator of the ratio clause fraction, would include the aggregate of the New Jersey debts. Doubtless, the federal estate tax would be deemed ratably divided in respect of the two states. Expenses of funeral and last illness are probably classifiable as debts, and so also accrued portions of state and municipal taxes according to the situs of the property taxed. Administration fees and expenses and attorney's fees in the matter of the administration in this state would also be included.

If the domiciliary assets were insufficient to pay the domiciliary debts and expenses another factor would thereby be added to be considered in the computation; and still others, if there were assets and creditors in several other states. If the decedent died testate, still further complications might result from testamentary provisions charging the debts upon particular portions of his estate, either by special provisions or as the resultant effect, in the particular case, of the ordinary residuary clause.

The possible combinations of circumstances are so varied that the impropriety, and, indeed, the impossibility, of attempting to prescribe in advance the proper procedure covering individual cases, is evident. Neither can the proper assessment be specifically directed in the case *sub judice,* for the reason that the record does not contain the necessary findings or information upon which such assessment can be based. What has been said will, however, indicate to the comptroller the lines of the additional inquiries to be made by him, and the general principles to be observed in dealing with the facts which shall thereby be ascertained.

The tax will be set aside and the record remitted to the comptroller for further proceedings and reassessment.