Essex County Surrogate's Court.

IN RE ESTATE OF MARY E. COLLINS, DECEASED.

Decided December 2, 1932.

For Mercie E. Hatch, *Alexander T. Schenck.*

For the estate of Mary E. Collins, *Stanley L. Gedney.*

Mary E. Collins died January 16th, 1930. On the petition of Savings, Investment and Trust Company of East Orange, reciting that she died a resident of Essex county, it was appointed administrator of her estate of May 21st, 1930, by the surrogate of Essex county. It has administered the estate and filed its final account, which, however, has not yet been approved by the Orphans Court. It then, on April 14th, 1932, filed a petition to the Orphans Court for a decree of distribution, alleging therein that doubt had arisen as to whether the decedent, at the time of her death, was domiciled in New Jersey or in New York. If her domicile was in New York, distribution under the law of that state would be different from distribution under the law of this state. On June 29th,

1932, Ina P. Hatch, as administratrix of the estate of Mercie E. Hatch, deceased, who was one of next of kin of Mary E. Collins, filed a petition with the surrogate of Essex county in which the alleged facts relating to Mary E. Collins and her estate were set forth and a prayer made that the general letters of administration on her estate be opened and set aside, and that special letters of administration upon her estate as a non-resident be issued to the Savings, Investment and Trust Company, to the end that distribution might be made in accordance with the laws of New York. A rule to show cause was thereupon made by the surrogate and a copy thereof served upon all of the known persons who might benefit from her estate, either under the laws of New Jersey or of New York. On the return date of this rule, August 9th, 1932, a hearing on the petition and rule was held by the surrogate. Under *Pamph. L.* 1917, *ch.* 133, the surrogate is given authority for good cause to open, vacate and set aside any decree made in his court.

Caleb and Margaret Collins, his wife, resided at Woodmere, Long Island, New York State, for almost forty years. The decedent, Mary E. Collins, was their only daughter. Throughout her infancy and during her majority and until her death she was mentally incompetent. In 1924, her mother, Margaret Collins, died at Woodmere. Soon thereafter, her father, Caleb Collins, placed the daughter, who was then an adult, with the Misses Kenton of Kearny, New Jersey, as a boarder and under their care. He paid her board and furnished other necessities of life for her until his death. The decedent remained with the Kentons until her death, except for a short time when she was in an institution. Caleb Collins died July 30th, 1925. His will, dated July 23d, 1925, recites that he was resident in Woodmere; the probate proceedings were in Nassau county, Long Island. It is thus established that Caleb and Margaret Collins were domiciled in Woodmere, Long Island.

During the minority of Mary E. Collins her domicile was in Woodmere, Long Island, because of her father's domicile there. *Blumenthal* v. *Tennenholz,* 31 *N. J. Eq.* 194; *Hess* v.

*Kimble,* 79 *Id.* 454; 81 *Atl. Rep.* 363; *Rinaldi* v. *Rinaldi,* 94 *N. J. Eq.* 14. See, also, 9 *R. C. L.* 547. A domicile, once existing, continues until another is acquired. *Cadwalader* v. *Howell,* 18 *N. J. L.* 138; *Clark* v. *Likens,* 26 *Id.* 207; *Watkinson* v. *Watkinson,* 68 *N. J. Eq.* 632; 60 *Atl. Rep.* 931; *Guggenheim* v. *Long Branch,* 80 *N. J. L.* 246; 76 *Atl. Rep.* 338; *affirmed,* 83 *N. J. L.* 628; 84 *Atl. Rep.* 21. To acquire a new domicile, both residence in the new locality and *intention* to remain there are indispensable. *Harral* v. *Harral,* 39 *N. J. Eq.* 279; *Rinaldi* v. *Rinaldi, supra;* 118 *Atl. Rep.* 685; *Smith* v. *Starkey Farms,* 8 *N. J. Mis. R.* 259; 149 *Atl. Rep.* 759. The decedent, Mary E. Collins, was mentally incompetent as a minor and continued in that condition as an adult until her death. An incompetent person is generally assumed in law not capable of forming an "intention" to change domicile. *In re Child,* 16 *N. J. Eq.* 498; *Virginia* v. *Kernochan,* 129 *Va.* 405; 106 *S. E. Rep.* 367. In a note in 30 *A. L. R.* 607, are collected cases holding that the domicile of one, who after attaining majority, becomes mentally incompetent, remains the domicile which he had when he became insane. The decedent in this case was incompetent as a minor and continued so until her death. Her domicile was that of her father during her minority. It would then naturally follow that her domicile remained that of her father after she became of age and that such domicile continued until her death. 19 *Corp. Jur.* 412, 417. This conclusion is supported by the English case of *Sharpe* v. *Crispin* (1869), (*L. R.*) 1 *Prob. & Div.* 611; 38 *L. J. Prob.* (*N. S.*) 17, in which it was held that where a person is of unsound mind throughout his majority, the same reasoning which attaches the domicile of the son to that of the father while a minor, continues to bring about the same result after the son attains majority. It is therefore held in this instant case that Mary E. Collins was at the time of her death, domiciled Woodmere, Long Island, in New York state.

General letters of administration were granted by the surrogate of Essex county, in which county she died, upon representations that she was a resident of that county. In view

of the evidence now adduced, general letters of administration were improvidently issued. The administrator should have been appointed under special ancillary letters of administration, sometimes designated as auxiliary letters of administration, in order to administer the assets in this state of a non-resident. Orphans Court act, paragraph 29. The order granting general letters of administration heretofore issued to Savings, Investment and Trust Company will be opened and set aside, and an order granting ancillary (or auxiliary) letters of administration will thereupon be entered issuing said letters to the Savings, Investment and Trust Company to the end that the assets of the decedent in New Jersey may be administered in New Jersey according to the statute and distribution thereafter made in accordance with the laws of New York, in which decedent was domiciled at the time of her death. *In re Dellinger,* 94 *N. J. Eq.* 409, 419, 420; 120 *Atl. Rep.* 27.

<div style="text-align:right">

ANDREW J. WHINERY,
*Surrogate.*