ADELE LOUISE WATKINSON, respondent,

*v.*

HOWARD E. WATKINSON, appellant.

[Submitted December 5th, 1904.   Decided April 28th, 1905.]

1. The object of a bill of review is to procure the reversal, alteration or explanation of a decree in a former suit, and must rest on error in law upon the face of the decree, fraud in procuring the decree, new or newly-discovered matter which could not have been used before the decree was made.

2. When it is sought to reverse a decree upon the discovery of some new matter, leave of the court must first be obtained by petition, supported by affidavit that the evidence is not only new, but could not have been discovered by reasonable diligence before the hearing.

3. Although there is no express statutory limitation as to the filing of bills of review, the analogous limitation of the right of appeal should govern, and a bill of review cannot be filed after the lapse of three years from the final decree, except in case of new or newly-discovered matter.

4. The temporary absence from this state of one domiciled here will not be held a change of residence, unless to the *factum* of residence elsewhere be added the *animus manendi*, for a domicile having once been acquired continues until a new one is actually acquired *animo et facto.*

5. Condonation of the adultery on which the decree for divorce was based will not justify the granting of leave to file a bill of review; if intended to be interposed it should have been pleaded and proved in the original suit.

On appeal from a decree of the court of chancery advised by Vice-Chancellor Pitney, whose opinion is reported in *67 N. J. Eq. 142.*

*Mr. John H. Backes,* for the appellant.

*Mr. James Steen,* for the respondent.

The opinion of the court was delivered by

VROOM, J.

The appeal in this case is from a decree advised by Vice-Chancellor Pitney upon a bill of review filed by Adele Louise Watkinson, the respondent, against Howard E. Watkinson. The bill was filed to review and set aside a decree of divorce obtained by the said Howard E. Watkinson in the court of chancery of this state on December 11th, 1896, and actually filed on December 17th following. The ground of the decree was adultery.

The record in this case shows that on November 5th, 1900, nearly four years after the signing of the above decree, the defendant in said cause, and the respondent here, filed a petition in the court of chancery, which was entitled a petition of defendant to open decree, to which was annexed the affidavit of the defendant that the said petition was true in all respects, and on the 28th of November, 1900, she exhibited a bill of review, praying that the decree of divorce, for the reasons in said bill set forth, be set aside and declared to be fraudulent and void.

The object of a bill of review, or a bill in the nature of a bill of review, is to procure the reversal, alteration or explanation of a decree in a former suit. *2 Dan. Ch. Pr. 1576.* If the decree has been signed and enrolled, the practice is to file a bill of review; if not, a bill in the nature of a bill of review. As stated by Judge Story, in *Dexter* v. *Arnold, 5 Mas. 310,* "the distinction between a bill of review and a bill in the nature of a bill of review, though important in England, is not felt in the practice of the courts of the United States, and perhaps rarely in any of the state courts of equity in the union. I take it to be clear that in the courts of the United States all decrees, as well as judgments, are matters of record, and are deemed to be enrolled as of the term in which they are passed. So that the appropriate remedy is by a bill of review." See, also, *Wiser* v. *Blachly, 2*

*Johns: Ch. 488.* Such a bill must rest on error in law upon the face of the decree without further examination of matters of fact, fraud in procuring former decree, new facts, or upon some new matter which has been discovered after the decree and could not possibly have been used when the decree was made. *2 Dan. Ch. Pr. 1576; Mitf. Pl. 101; Taylor* v. *Sharp, 3 P. Wms. 371; Wiser* v. *Blachly, supra.*

It seems to be the settled practice in equity, when it is sought to reverse a decree signed and enrolled upon the discovery of some new matter, to first obtain the leave of the court to the filing of the bill, and the usual practice is to make the application by petition, supported by affidavit that the evidence is not only new, but could not have been discovered by reasonable diligence before the hearing, and, as said by Daniels, the court must be satisfied that the new matter has come to the knowledge of the applicant and his agents for the first time since the period at which he could have made use of it in the suit, and that it could not with reasonable diligence have been discovered sooner, and that it is of such a character that if brought forward in the suit it would have altered the judgment. *2 Dan. Ch. Pr. 1563; Wilkinson* v. *Parish, 3 Paige 653.*

Presumably, leave was given to the filing of the present bill of review, although the fact of the granting of such leave does not appear in the record before us, nor is the fact of such leave having been granted set out in the bill, as it should be, where new matter is alleged upon which it is sought to impeach the decree. *Mitf. Pl. 106.*

At that time the posture of affairs was this: The appellant had filed his bill for divorce against the respondent upon the ground of adultery, on June 13th, 1896. An order of publication against her as an absent defendant was made returnable August 31st, 1896, and an affidavit made and filed by the solicitor of the appellee that he had personally delivered a copy of the usual printed notice in cases of divorce to the respondent on the 9th day of July, 1896, at her place of abode in the city of New York. She did not appear to the suit and an order of reference was made to James S. Aitkin, special master, and the hearing came on before him in October of the last-named year, and on

the 28th of October the master filed his report, advising that a decree of divorce should be made for the crime of adultery, and on the 11th of December, 1896, a decree of divorce was duly made pursuant to said report.

The depositions thus taken before the master showed that the complainant was then a resident of the city of Trenton, in this state, and that he had lived there for fifteen years then last past. The crime of adultery charged in the bill was proved satisfactorily to the master and he reported in favor of a divorce, which was granted. The petition before mentioned as having been filed to open the decree, or if it may be considered, for leave to file a bill of review, alleges that the petitioner first positively heard that a decree of divorce had been granted to her husband during the year 1900. She further alleges that she and her husband removed to New York City in November, 1895, and lived there together until August, 1896, at which time he secured certain letters, was indignant at the contents thereof and blamed the petitioner therefor and left her; that in August or September, 1896, the petitioner signed some papers which she understood to be in an action of divorce, but as she was without means or any friends or advisers, and her health broken down and her condition and mind was such that she was unable to even consider or think of the matter; that subsequently, in September or October, 1896, her husband returned to New York and cohabited with her pending the action brought for divorce, and informed petitioner that no suit was pending and in other ways imposed upon the petitioner and the court.

The bill of review filed in November of 1900 admits that the complainant therein, in July or August, 1896, was informed of the institution of a divorce suit against her by her husband, and charges that subsequently he returned to her, assured her that he had abandoned his suit for divorce and cohabited with her, and that notwithstanding that he was living with her as husband and wife, and assuring her that he had abandoned said divorce proceedings, he was in fact prosecuting the same, and in fact, in December, 1896, obtained a decree of divorce against the complainant, and that she did not defend said cause because she believed that the same had been abandoned; that said defendant

was at the time of filing his said bill a resident of the State of New York; that after filing his said bill he condoned any fault or misconduct of complainant, and that his conduct was a fraud upon the court and made the decree null and void, and that the complainant had but recently discovered the fraud practiced upon her and only recently had heard that a decree of divorce had been granted in said cause.

The answer of the defendant denies specifically the allegations of the said bill of review that he had condoned the offence of the complainant or had assured her that he had abandoned the suit for divorce; he further denies the allegation that the divorce proceedings were a fraud upon the court or the complainant, and that he was, at the time of the filing of his bill for divorce, or at any other time, a resident of the State of New York.

After the hearing of witnesses the vice-chancellor advised a decree in favor of the respondent upon the ground that the complainant had no domicile or residence in the State of New Jersey at the time of the filing of the bill which resulted in the decree attacked, or during the pendency of that suit, and that the adultery on the part of the wife, upon which the decree therein was based, had been thoroughly condoned by the husband, and that the allegation of condonation pending that suit and before the decree therein was sustained by the weight of the evidence, and that the complainant's delay in asserting her right had not been such as to bar her from relief.

In his opinion the learned vice-chancellor sets out at some length what, to use his own language, is termed a statement of the undisputed facts of the case, and adds that it would seem that the husband, the appellant here, had no residence or domicile in New Jersey at the time he was carrying on his suit here for divorce. If this could be considered an undisputed fact, or even a fair deduction from the proven facts in this case, it would decide this cause, for it would have to be admitted that he committed thereby a fraud upon the court, but in my opinion the testimony does not by any means establish this as a fact. The testimony of the appellant before the master in this suit for divorce, on October 9th, 1896, disclosed that he then resided in Trenton, New Jersey, and that he had lived in Trenton for

fifteen years then last past.   This was corroborated by the testimony of the father of the appellant, a clergyman of the Baptist denomination, who testified that at the time he married his son to the respondent, on the 6th of November, 1889, his son was a resident of Trenton; that he had resided in Trenton ever since, and still resided there on the day he testified, October 10th, 1896.   It is true that in his examination before the vice-chancellor the appellant said that after his wife left him and had gone to New York and resided there in a flat, he went there and lived with her for four or five months, when he again went back to Trenton.   I find it difficult to perceive how this temporary residence in New York City can be held to affect his residence or domicile in Trenton in the absence of any evidence of intention on his part to abandon it.   The fact that he did not intend to change his domicile is manifested by appellant's beginning his suit for divorce after he returned to Trenton, and this established his belief, not only as to his residence, but his domicile in this state.   The learned vice-chancellor, for the purpose of sustaining the view that the appellant had abandoned his residence in New Jersey by residing in New York City a few months, cited the case of *German Savings and Loan Association* v. *Dormitzer, 192 U. S. 125,* as "directly in point."   An examination of that case discloses that it is far from being in point.   In the opinion in that case, Mr. Justice Holmes said that "it appeared from the testimony of the husband that before he made a contract for part of the land in question he had sold out his property and business in Kansas and had gone in search of what he called a new location, and that when he bought this land he desired to locate there."   These facts, the court held, were sufficient for the courts of Kansas to find that he had changed his domicile.

It seems unnecessary to point out how absolutely the facts in the case under consideration are at variance with those in the case cited, the intent in that case of the husband to change his domicile being apparent from his own testimony, while here there is no evidence whatever to warrant the belief or to enable a court to find that the appellant intended to change his domicile.

To construe the temporary residence by appellant with his wife in New York to be a change of domicile seems to me unwarranted, for, as Mr. Justice Depue said, in *Harral* v. *Harral, 39 N. J. Eq. (12 Stew.) 285*, "to the *factum* of residence must be added the *animus manendi*, and that place is the domicile of a person in which he has voluntarily fixed his habitation, not for a mere temporary or special purpose, but with a present intention of making it his home, unless or until something which is uncertain or unexpected shall happen to induce him to adopt some other permanent home."

The doctrine laid down by the courts of the United States is that a domicile having been once acquired, continues until a new one is actually acquired *animo et facto*. *10 Am. & Eng. Encycl. L. 15; Cadwalader* v. *Howell, 18 N. J. Law (3 Harr.) 138; ·Clark* ads. *Likens, 26 N. J. Law (2 Dutch.) 207.*

I am unable to agree with the conclusion reached below that, as alleged in the bill of review, at the time of beginning his suit for divorce the appellant was a resident of the State of New York, and therefore am of opinion that there was no fraud practiced on the court of chancery by the appellant in swearing that he was a resident of the State of New Jersey.

The second ground upon which below was based the right of the respondent to relief is because, as stated in the opinion, after the adultery charged in the bill and after the commencement of the husband's suit and the service upon the wife of process, and before decree, the husband returned to the wife and cohabited with her, and led her to believe that he had abandoned the suit.

Condonation, standing alone, would not have justified the granting leave to file a bill of review, for how can that be considered new matter which could have been produced and used by the respondent at the time when the decree was made. Every allegation relating thereto, if true, was known to the respondent during the pendency of the divorce suit and before the entering of the decree, and if intended to be interposed as a defence should have been pleaded and proved in that suit. It is too late if it is first made known in an application for a bill of review, for, as was well said by Lord-Chancellor Talbot, in *Taylor*

v. *Sharp, 3 P. Wms. 371,* "unless this relief were confined to new matter it might be made use of as method for a vexatious person to be oppressive to the other side and for the cause never to be at rest."

Now, after the lapse of four years from the entering of the final decree of divorce, and years after the taking from her of the child, pursuant to the terms of said decree, she comes before the court of chancery charging that she was deceived by her husband as to the abandonment of the suit for divorce; that during the pendency of that suit he condoned her guilt, and, further, that she never knew of the granting of the final decree of divorce until after her time for taking an appeal had expired. No extended review of the testimony is, it seems to me, necessary in the matter of the alleged deception on the part of the appellant as to the abandonment of the divorce proceedings, for the extent to which the respondent goes in her testimony is that she supposed from appellant's conduct he had abandoned the proceedings; but there is no pretence whatever that the appellant ever told her that he had done so, and in fact she testifies distinctly that she never had any conversation with him relating to the suit for divorce pending the suit. The testimony of the appellant is that he never visited his wife during the pendency of the proceedings, and never saw her save when he visited the boy, who was then living with her. The charge that the respondent had been led to believe that the appellant had abandoned his suit for divorce is not sustained in fact; this being so, the charge of fraud falls and no ground can exist for the consideration of the alleged condonation, which, as before stated, could not be held to be new matter warranting the giving leave to file a bill of review, but was a personal defence of the respondent, which she could set up as a defence or waive, as she saw fit.

This brings us to the consideration of the respondent's alleged denial of knowledge of the existence of the granting of the decree of divorce until shortly before the time she filed the petition for a bill of review. An examination of her petition discloses that upon that very vital part of the respondent's case the allegation in the petition is that

"your petitioner first heard positively that a divorce had been granted to her husband, Howard Watkinson, for infidelity on the part of your petitioner, through William D. Tyndall, an attorney and counsellor-at-law, of New York and New Jersey, who examined your petitioner in supplemental proceedings during the year 1901."

Again, the averment in her bill of review is

"and your oratrix having but recently discovered the fraud practiced upon her, and having only recently learned that a decree of divorce had been granted in said cause, so as aforesaid instituted by her said husband, she expressly charges said decree, so fraudulently obtained as hereinbefore mentioned, ought to be set aside," &c.

The evident intent of the above allegation was to excuse the laches of the petitioner, the respondent here. An examination of her testimony on this point is interesting. When examined in this cause *de bene esse,* on June 30th, 1902, before Samuel C. Mount, one of the masters in chancery, she was asked and replied:

"*Q.* Did you know that he had obtained the decree of divorce at that time? [Summer of 1897.]
"*A.* He said that he had.
"*Q.* When did he say that?
"*A.* Well, he told me that when I first saw him after he left home in November. The next time I saw him he said he had the divorce. When it was granted I don't know; he didn't say when he got it."

Now, in the testimony before the vice-chancellor, in referring to the summer of 1897, she was asked and said:

"*Q.* (By the court.) I understand you to say he came to your father's house and stayed a week the next summer [1897]. He asked you when was the last time he had sexual intercourse?
"*A.* The last time was in the summer of 1897, at home.
"Mr. Tyndall—That was after the decree.
"The Court—After the decree, if she was willing to accept him as a concubine would a stranger—
"*A.* I didn't know the divorce was granted.
"*Q.* (By the court.) He never told you the divorce was granted?
"*A.* He never told me, and I never knew it any way, to be positive of it.
"Mr. Backes—Did I understand the witness to say she didn't know, and he never told her?
"*A.* He never told me, no, that the divorce had been granted; nobody ever told me."

It is difficult to reconcile the very material variance between the testimony of the respondent given at two different times in the same cause. One thing, however, it does demonstrate, and that is the truth of the vice-chancellor's comment that the wife clearly is not to be implicitly believed.

No attempt was made to reconcile these statements of the respondent, and in my opinion the respondent has failed to sustain the allegation of the petition and bill that she had only learned of the granting of the divorce in the year 1900, and she has no standing to urge it as new matter, then only brought to her knowledge, to enable her to file a bill of review.

The respondent having failed to make out a case either on the question of residence or of condonation and fraud, we are brought to the consideration of the very serious and important question of whether her laches and delay in petitioning for the filing of a bill of review has barred her right to the relief prayed for. The record in this case shows that the petition for leave to file a bill of review was not filed until nearly four years after the entering of the final decree in the suit for divorce, and the question to be determined is whether the laches and delay of the respondent in asserting her rights is a bar to this suit.

The rule in the English courts is that when twenty years have elapsed from the time of pronouncing a decree which has been signed and enrolled, a bill of review cannot be brought unless the plaintiff was under disability. *2 Dan. Ch. Pr. 1580; Mitf. Pl. 105; Lytton* v. *Lytton, 4 Bro. Ch. C. 441; Deloraine* v. *Brown, 3 Bro. Ch. C. 633.*

And in the supreme court of the United States, in the case of *Thomas* v. *Harvie's Heirs, 10 Wheat. 146,* Justice Washington, in commenting upon the question of the limitation of the right to file a bill of review, said: "It must be admitted that bills of review are not strictly within any act of limitations prescribed by congress, but it is unquestionable that courts of equity, acting upon the principle that laches and neglect ought to be discountenanced, and that in cases of stale demands its aid ought not to be afforded, have always interposed some limitation to suits brought in those courts." And this case explicitly declares the rule,

never since departed from in that court, as follows: "There is no statute expressly limiting bills of review, but the courts of the United States are governed in this particular by the analogous limitation of the right of appeal, and therefore a bill of review cannot be filed after the lapse of five years from the final decree." Applying this rule to the practice in our state, after the lapse of three years leave would not be granted to file a bill of review.

There is, however, one exception to the general rule in England, as noticed by Mitford, and that is the discretionary power of the court in the case of newly-discovered evidence, and this exception Judge Washington recognizes in *Thomas* v. *Harvie, supra,* saying: "Whether a bill of review, founded upon matter discovered since the decree, is in like manner barred by the lapse of five years after such decree, is a question which need not be decided in the present case, since we are all of opinion that it is in the discretion of the court to grant leave to file a bill of review for that cause."

My examination of the authorities leads me to the conclusion that the law as above laid down in the supreme court of the United States has been almost uniformly followed in this country.

The time of appeal having expired when this application for leave to file the bill of review was made, the petitioner was barred unless her case could be brought strictly within the exception of newly-discovered evidence, or of some special equity that would give the court the discretionary power to make the order.

The question of fraud being eliminated from the case, there is left only one matter which could in legal contemplation have been urged either as a newly-discovered fact or as a ground of special equity upon which to rest an application for a bill of review, viz., the ignorance of the petitioner of the existence of a decree of divorce until after the time for appeal had expired. But it has already been shown that this has no foundation in fact, for the petitioner, in her own testimony, admits and swears to her knowledge of the final decree in the divorce suit within a year after the entry of the same.

But in the court below the learned vice-chancellor said that he was unable to see how any delay beyond the time limited for taking an appeal on the part of the respondent could on any known principle affect her right to a declaration by the court that the decree of divorce was invalid and void *ab initio* by reason of the lack of jurisdiction of the court of chancery to proceed in the cause. He then adds that where there is a lack of jurisdiction by reason of a want of residential domicile on the part of both parties, combined with extraterritorial service and the absence of any formal appearance by the defendant, and that it followed that the decree was absolutely void. It was for this reason that he held that the respondent's belief was not affected by her laches. But, as we have already shown, there was a residential domicile on the part of the appellant when he filed his bill for divorce, and although the service on the wife of process was extraterritorial, it conformed to the law of this state, and the decree, instead of being void, was valid and binding upon the parties.

There is, however, another consideration why the laches of the respondent should not be overlooked, and that is, that on the strength of the decree in the court of chancery the appellant has married again, so that other rights have now intervened, and an entirely innocent party will suffer should the decree be revoked.

I am clearly of the opinion that the earlier decision of the court of chancery that the appellant had a legal domicile and residence in this state when he filed his bill for divorce has not been successfully impeached; that there was no condonation on his part of the adultery of his wife that she is now entitled to set up, and that the delay of the respondent in asserting her rights bars her from the relief prayed for by her.

The decree below should be reversed and the bill of review dismissed.

*For affirmance*—PITNEY, SWAYZE—2.

*For reversal*—THE CHIEF-JUSTICE, DIXON, GARRISON, FORT, GARRETSON, BOGERT, VREDENBURGH, VROOM, GREEN—9.