John T. Dorrance died at Cinnaminson, New Jersey, September 21st, 1930. His executor petitioned for and obtained decree for probate of his will as a resident of Cinnaminson, in Burlington county, New Jersey; and subsequently made report of the assets of the estate, as of a resident decedent, to the state tax commissioner. The latter made an assessment of transfer inheritance tax amounting to nearly $17,000,000, against the estate, October 17th, 1931. He subsequently, on December 12th, 1931, opened the assessment and gave the executors permission to submit further evidence on the question of decedent's domicile; this having been submitted, the commissioner made a reassessment on October 10th, 1932, in the same amounts as before. From this assessment the executors appeal to this court.
The main contention of appellants (several other subordinate grounds of appeal, of minor importance, are specified in the petition) is that the assessment is erroneous, illegal and invalid because the commissioner found that decedent was domiciled in New Jersey at the time of his death, and included the value of decedent's intangible personal property in computing the tax; whereas (they contend), decedent was not domiciled in New Jersey, and hence no tax can legally be assessed in New Jersey in respect of the testamentary transfer of such intangible personalty.
Concededly the conclusion is true, if the premise be true. Tax on the testamentary (or intestate) transfer of a decedent's intangible personally may be legally assessed and levied *Page 270 
only by the state in which the decedent was domiciled at the time of his death; this is conclusively settled by the decisions of the United States supreme court in First National Bank ofBoston v. Maine, 284 U.S. 312, and Farmers' Loan and TrustCo. v. Minnesota, 280 U.S. 204, and this determination is controlling upon the courts of this state in this litigation.
The essential issue is therefore whether or not Dr. Dorrance, at the time of his death, was domiciled in New Jersey. If he was, then the tax in question is correct (at least substantially); if he was not, then no tax can be levied by New Jersey, except as to the few thousand dollars of tangible personal property located here — for almost the whole of the estate (of some $115,000,000) consisted of stocks, bonds, and other intangible personalty. There are, however, a few subordinate or preliminary issues.
For some years prior to his death Dr. Dorrance had occupied two residence houses, one in New Jersey and the other in Pennsylvania. During the time the present proceedings were pending, similar tax proceedings were instituted against the estate in Pennsylvania, on the claim by that state that Dr. Dorrance was domiciled in Pennsylvania; this claim was sustained, and a tax assessed by the register of wills of Delaware county, Pennsylvania. On appeal to the orphans court of that county, that court adjudged Dr. Dorrance as domiciled in New Jersey and set the tax aside; but later the supreme court of Pennsylvania reversed the decree of the orphans court, and directed the assessment of a tax of some $17,000,000. The supreme court of the United States denied the application of the executors for review of that decree; and the executors were compelled to pay that tax to the Pennsylvania authorities.
The appellants contend that the determination by the Pennsylvania supreme court is controlling upon the authorities in New Jersey, upon the question of Dr. Dorrance's domicile. This is denied by respondents.
Respondent contends that the appellants are estopped or precluded, for several reasons, from claiming that Dr. Dorrance was not domiciled in New Jersey. It may well be that *Page 271 
this contention is sound. Certainly at first impression there would seem to be considerable weight to the argument that the executors, after having claimed by their sworn petition to the Burlington county surrogate, that Dr. Dorrance was domiciled (resident) in New Jersey; after the adjudication by the surrogate that he was so domiciled, and the consequent decree probating the will in Burlington county and issuing letters testamentary to these executors (on which letters depends their authority to act in these very proceedings and in the administration of the estate); after they have acted for some two years in administering the estate on the strength of that probate in Burlington county, so procured by them, and have obtained and received from the Burlington county orphans court, allowances of $1,500,000 for their services as such executors; after they have, by their original sworn petition to the tax commissioner in these proceedings, admitted and asserted that the decedent was domiciled in this state; and after the decedent himself (the very person whose property is concerned), has asserted in the strongest terms, in the very will which conferred authority on these executors to act as such, that he was domiciled in New Jersey; that the executors should not now be heard or permitted to claim that decedent was not domiciled in New Jersey.
In view of the publicity which has been accorded the litigation over this estate both in the courts of Pennsylvania and of New Jersey, and the public interest therein, this court has deemed it advisable to consider the main issue involved — to wit, the issue as to the actual domicile of the decedent.
As has already been said, the appellants contend that this court is precluded from considering that issue; that the decision of the Pennsylvania court is conclusive and controlling upon this court. With that contention this court is unable to concur.
That contention, more fully expressed, is that (1) the Pennsylvania decision or decree was a final decree in a proceeding in rem; and (2) the res in that proceeding was the assessment and levy of transfer tax in respect of the intangible personal property of the decedent; (3) that the right of Pennsylvania to assess and levy such tax in a decedent's *Page 272 
estate was, and must necessarily be, predicated upon the fact that the decedent was domiciled in Pennsylvania; (4) that under the law of Pennsylvania the determination of the Pennsylvania court in a proceeding of this kind is final and conclusive against all the world; (5) that by virtue of article 4, section 1, of the constitution of the United States and of the statute enacted to carry that provision into effect (the act of May 26th, 1790; U.S. Rev. Stat. § 905), that adjudication by the Pennsylvania court must be accorded the same effect by the New Jersey courts, and hence must, in this appeal, be regarded as final and conclusive against the State of New Jersey (notwithstanding New Jersey was not a party to the Pennsylvania proceedings) and as a conclusive adjudication against the claim by New Jersey of the right to levy transfer inheritance tax in respect to the intangible personalty of the Dorrance estate.
The correctness of the first three propositions is not questioned; the correctness of the fourth may be assumed (but not decided); it is the fifth proposition which is incorrect, and which vitiates the conclusion of the argument.
The constitutional provision invoked by the appellants is commonly known as the full faith and credit clause. It is true that under it, and the statute, the courts of this state are bound to give to the judicial proceedings in Pennsylvania the same faith and credit as they have by law and usage in the courts of Pennsylvania. But this is true only if the proceedings in the Pennsylvania court were within the jurisdiction of that court. It is always open to the courts of the sister state to inquire into the jurisdiction of the court which pronounced the judgment in question. When it is demanded of the courts of one state that full faith and credit be accorded to the judgment of the court of a sister state, "an inquiry into the jurisdiction [of the latter court] is always permitted, and if it be shown that the proceedings relied upon were without the jurisdiction of the court, they need not be respected." Tilt v. Kelsey,207 U.S. 43 (at p. 59); Thompson v. Whitman, 85 U.S. 457; Thormann
v. Frame, 176 U.S. 350; Burbank v. Ernst, 232 U.S. 162. *Page 273 
Concededly the courts of Pennsylvania had no jurisdiction to assess and levy the tax in question unless the decedent was domiciled in Pennsylvania. It is therefore open to this court, in the exercise of its right to inquire into the jurisdiction of the Pennsylvania court, to inquire into, ascertain and determine whether or not the decedent was domiciled in Pennsylvania. If it be determined that he was not domiciled in Pennsylvania, then the determination of the Pennsylvania court that the transfer inheritance tax assessable in respect of his intangible personalty is due to the State of Pennsylvania, is in nowise binding upon this court and can in nowise interfere with the right of this court to inquire and determine if the decedent was domiciled in this state, and to affirm and establish (if it finds that decedent was domiciled in this state) the right of this state to levy the tax in question and the validity of the tax so levied and now under appeal.
As a practical matter the two questions, although technically separate and distinct, present for determination in the instant case a single issue — for it is not only conceded by counsel but apparent from the evidence, that Dr. Dorrance was domiciled either in New Jersey or Pennsylvania; that he was domiciled in New Jersey at and prior to 1925; that if he did not later become domiciled in Pennsylvania, then he remained and was domiciled at his death in New Jersey, but if he did become domiciled in Pennsylvania, then he remained so domiciled at his death. In short, the single question is — was he or was he not domiciled in Pennsylvania?
The evidence shows that Dr. Dorrance after finishing his education went to work at Camden, New Jersey, in 1907, and lived in the same place; that he continued to reside in Camden after his marriage in 1906; that he and his wife finally found the kind of a home they wanted at Cinnaminson, New Jersey, and established themselves in it as their home in 1911. The evidence need not be recited in detail, but it clearly established that at that time that house became in fact the residence and home of Dr. Dorrance and his family; that Dr. Dorrance intended it as his fixed and permanent residence and home; that he intended it to remain such indefinitely; *Page 274 
that he had no intention at that time that it should not always remain his home. In short, the evidence establishes beyond any doubt that in 1911 Dr. Dorrance became and was domiciled at Cinnaminson, New Jersey, and that that place continued to be both his actual residence or home and his legal domicile, at least until 1925. Nor is this controverted by the appellants.
The evidence further shows that in 1925 he purchased a house and grounds at Radnor, Pennsylvania, and made extensive improvements, with the intent and purpose that this place should be a residence for himself and his family; and that in the latter part of 1925 he and his family moved into the Radnor house and actually occupied it as a residence; that from that time to the time of his death Dr. Dorrance actually occupied the Radnor house as a residence most of the time (excluding trips abroad and periods of summer vacation) and the instances of his occupation of the Cinnaminson residence were not particularly frequent and were of comparatively short duration, and the instances of occupation of the Cinnaminson residence by his wife and children were even less frequent and of even shorter duration than his own.
If the question of the domicile of Dr. Dorrance at the time of his death depended only upon the fact as to what residence he chiefly occupied as a home during the five years preceding his death, it would probably be conceded by the respondent that his domicile was in Pennsylvania. That fact, however, is neither the determining factor, nor a controlling factor, in this case, under the law of domicile.
There are certain fundamental principles of the law of domicile, so thoroughly established everywhere as to be frequently called "axiomatic." Among them are the following:
1. When a man has acquired a domicile in a particular place, that place remains his domicile until he acquires another domicile.
2. To effectuate such a change of domicile it is requisite that he shall in fact remove from the old domicile to the new, with the intention of abandoning the old domicile and of remaining permanently or indefinitely in the new. *Page 275 
3. The burden of proof to establish that a change of domicile has occurred rests upon the party so asserting.
4. A man has the right to choose his own domicile, and his motive in such choice is immaterial.
5. A man may have more than one residence (such as a summer residence and a winter residence), but he cannot have more than one domicile at any given time.
6. If a man has more than one residence during a given period, he has the right to select which one of them shall be his domicile.
It seems scarcely necessary to cite authorities for these propositions. It is not understood that any of them are controverted by appellants. Reference may be made to such cases as Cadwalader v. Howell, 18 N.J. Law 138 (the unanimous opinion of the supreme court and the leading case in New Jersey);Guggenheim v. City of Long Branch, 80 N.J. Law 246;76 Atl. Rep. 338; affirmed, 83 N.J. Law 628; 84 Atl. Rep. 21; Mitchell
v. United States, 88 U.S. 350, and the authorities cited in these cases; also such authoritative text writers as Phillimore,Domicile; Dicey, Domicile; Wharton, Conflict of Laws; Story,Conflict of Laws; Kent's Comm.
We have, in the present case, this situation: that Dr. Dorrance had a residence at Cinnaminson, New Jersey, which he occupied for many years and where he unquestionably was domiciled at and prior to 1925; the assertion (in the Pennsylvania proceeding and in this appeal) that he changed his domicile to Radnor, Pennsylvania, in 1925; the necessity that the truth of that assertion be proven by the weight of evidence; and the necessity of proving not merely that he then changed his residence in fact, but that he did so with the intention of abandoning his domicile in Cinnaminson and with the intention that the house at Radnor should thereafter be his permanent home.
The appellants (and the Pennsylvania court) rely on the facts that Dr. Dorrance purchased the Radnor house and improved it with the intention of using it as a residence or home for himself and his family; that it was far larger, more expensive and pretentious than the old home at Cinnaminson; *Page 276 
that he thereafter — except for European trips and summer vacations — occupied it by far the greatest part of the time (and his family even more so); that his subsequent occasions of occupancy of the Cinnaminson residence were comparatively few and of short duration (the occupancy by his family even fewer and shorter); that from and after November, 1925, the Radnor house was in fact the real residential home of himself and his family.
All this must be conceded; it is fully established by the evidence. All this, however, goes only to the fact of residence; it is equally necessary to prove intent — to prove that in moving into and occupying the Radnor residence as a residential home, he did so with the intention of occupying it as a permanent home and abandoning the Cinnaminson residence as a home.
The appellants (and the Pennsylvania court), assert that that intention is proven — that it is a necessary inference from the facts stated; but their argument goes but little beyond that mere assertion. Their argument is concentrated on the effort to show that from and after 1925 the house at Radnor was in fact the real and actual home of the Dorrances and the house at Cinnaminson a mere country house occasionally and briefly visited. Their contention is that the establishment and occupancy of the Radnor house as an actual home proves that there was an intention that it should be his permanent home and that there was no intention of returning to the Cinnaminson house as his home.
This is an obvious non sequitur, and it disregards a great mass of evidence relevant and material on the question of intent, evidence which, in the judgment of this court, clearly establishes an intent quite the contrary, an intent not to abandon the Cinnaminson home, an intent that the Radnor house was to be a home only temporarily and that the Cinnaminson house was to be returned to as a home.
It is true, as the appellants urge (and the Pennsylvania court stresses), that the intention required for the acquisition of a domicile is an intention to make a home in fact, and not an intention to acquire a domicile. Am. Law Inst., Restatement, *Page 277 Conflict of Laws, section 21. If Dr. Dorrance had intended to make his residence in Radnor his actual home for all practical purposes for the rest of his life and intended to live no more in Cinnaminson, he could not retain his legal domicile in Cinnaminson; in such case his intent or wish to retain a technical legal domicile in New Jersey while actually making, and intending to make, his permanent home in Pennsylvania, would be unavailing. Dickinson v. Inhabitants of Brookline,181 Mass. 195. "A person's wish to retain a domicile in one country will not enable him to retain it if in fact he resides with animusmanendi in another." Dicey, Conflict of Laws, 106.
No matter how much he may wish or strive to avoid that legal consequence, a man's domicile will follow him to his new home, if he establishes himself in a new home and intends that new home to be his permanent home. But that legal result will not follow, no matter how completely he establishes himself in a new home, if he does not intend the new home to be his permanent home — if he intends that it shall not be his permanent home.
The law is thoroughly well settled and unquestioned everywhere that a man's domicile once acquired, remains until a new domicile is acquired, and that a new domicile is not acquired by moving to another residence unless he has the intention to make his home permanently in the new residence. Cadwalader v. Howell, supra;Watkinson v. Watkinson, 68 N.J. Eq. 632; 60 Atl. Rep. 931;Givernaud v. Variel, 86 N.J. Eq. 80; 97 Atl. Rep. 49; affirmedunanimously, sub nom. Plahn v. Variel, 87 N.J. Eq. 654;103 Atl. Rep. 1054; Williamson v. Osenton, 232 U.S. 619, where the United States supreme court says:
"The essential fact that raises a change of abode to a change of domicile is the absence of any intention to live elsewhere (Story Confl. L. § 43); or as Mr. Dicey puts it in his admirable book, `the absence of any present intention of not residing permanently or indefinitely in the new abode. Conflictof Laws (2d ed.), 111.'"
Citations of authority to the same effect could be multiplied *Page 278 
indefinitely, including decisions in most of the states of the union — but to no useful purpose. One more may be mentioned because of its particularly pertinent interest — In re Frick'sEstate, 116 N.Y. Misc. 488; 190 N.Y. Supp. 262, in which the circumstances were as nearly identical with those in the Dorrance case as is possible in any two cases. Henry C. Frick, a millionaire originally domiciled in Pittsburgh, Pennsylvania, maintained a home in New York City in which he spent most of his time during the last five years of his life. The New York tax authorities sought to assess transfer inheritance tax on his estate but the New York court held in favor of Pennsylvania that Mr. Frick had never abandoned his domicile in Pennsylvania; and had not acquired a legal domicile in New York. In the DorranceCase the Pennsylvania court had the same question and the same situation. It is impossible for this court to concur in its contrary determination, nor to conclude otherwise than that the Pennsylvania adjudication is erroneous and that the opinion of the Pennsylvania orphans court and of the dissenting judges of the Pennsylvania supreme court was correct.
The evidence in the present case is overwhelming that although Dr. Dorrance moved to Radnor and made his home there for the greatest part of the time during the succeeding five years terminated by his death, he never had the intention of abandoning his home at Cinnaminson; he never had the intention of making the Radnor residence his permanent home; he always had the intention of returning to his home at Cinnaminson.
The situation was essentially the same as that of a man who goes to a foreign country as ambassador, or minister or consul, or as foreign representative for one of the large business coroprations. He establishes himself and his family in a home in that foreign country; that is his actual home during the period of his stay, but it is not his permanent home. He may not return to his old home even once during the entire period of his foreign stay, which may be for years; and his stay may be for a definite or indefinite number of years; but if he does not intend to make his home there permanently, *Page 279 
if he intends to return to his old home at the conclusion of his job or his period of assignment, he does not lose his old domicile. So, also, with a man who, when his son or daughter goes to college, moves from his old home to a house in another state to be near his child, intending to stay in the new home while his child is being educated (a period which could not be definitely limited in advance), but intending to more back to the old home thereafter; he would not lose his old domicile and acquire a new one.
Such was the case with Dr. Dorrance. His life had been spent in New Jersey; his business had been there for years and was still there; all of his own interests were there; it was there that he had his home and there he wanted to remain. So far as he individually was concerned, he did not want to reside in Radnor or anywhere else than his home in Cinnaminson. His children, however, were growing up. He had four daughters, the eldest was eighteen. For the purpose of completing their education and giving them social advantages deemed necessary or advisable for their benefit in approaching maturity, he yielded to his wife's arguments and solicitations and established the new residence and home in Radnor. But it is entirely clear from the proofs that he did this with no intention of abandoning the home at Cinnaminson; with no intention that the Radnor house should be his permanent home; with every intention that the Radnor house was not to be his permanent home but only a temporary home for so long only as should be requisite or advisable to complete their education and give them the proper social preparation for their start in life, and with the intent that as soon, at least, as that had been done — if not indeed earlier — he would return to his home in Cinnaminson.
That this was his intent was manifested in almost innumerable ways. It is difficult, if not impossible, to conceive of a case in which the items of evidence in this behalf could be more numerous. It appears from his conversations and his correspondence with his wife, his relatives, his lawyers, his friends, his business associates, his servants, and many others with whom he came in contact. His business remained *Page 280 
at Camden, near the Cinnaminson house; his office remained at Camden; his securities remained in the Camden banks; his personal counsel and legal advisor continued to be Judge Lippincott whose offices were in Camden and whose home was near Cinnaminson.
He continued actively as a member of the vestry and senior warden of Christ Church, at Riverton, New Jersey, near Cinnaminson. He was interested in investments in New Jersey and not in Pennsylvania. He was assessed and taxed on his personal property in Cinnaminson and not in Radnor. He and his wife continued to vote in Cinnaminson; neither one ever voted in Radnor. He was active politically in various ways in New Jersey, but not in Pennsylvania. He was appointed to, and served for several years on, a commission of the State of New Jersey. His motor vehicle registrations and drivers licenses were from New Jersey.
His intention to retain his residence in New Jersey is evidenced by many, many written statements and declarations, many of them in legal documents or instruments of various kinds, some of them under oath, and including his will — an instrument of particular importance, not only because of the nature and solemn character of such an instrument, but because of the particular and forceful nature of the expressions therein as to his residence.
He continuously maintained the Cinnaminson house as a residence, open and fully equipped for occupancy at all times, and with a full staff of servants (whereas the Radnor house was sometimes closed and without servants); and both he and his wife and children came and stayed there at times, even though infrequently and for periods of not long duration. It is evident that he intended to occupy the Cinnaminson home more than he actually did; that he did not do so was largely due to the fact that subsequently to moving to the Radnor house his mother became ill and he established her at Cinnaminson, which thereby cut down the living quarters for the family. It is, however, not without special significance that it was to the Cinnaminson house that he returned when he came down, ill, from Bar Harbor in September of 1930, *Page 281 
and that he died there. He had not only kept the house constantly in perfect repair, but had made improvements looking toward his eventual return.
The foregoing is by no means an exhaustive recital of all the evidence on the point; but enough has been mentioned to show the great weight of evidence to prove that he had no intent to abandon the Cinnaminson house as his permanent home; that it continued, as always, the "old homestead;" that he intended the Radnor house only as a temporary, not a permanent home; that he always intended to return to the permanent home at Cinnaminson.
It results therefore that he never acquired a legal domicile in Pennsylvania; that he never lost his legal domicile in New Jersey; that the Pennsylvania court was without jurisdiction to levy transfer inheritance tax on the intangible personal property of his estate; that the Pennsylvania assessment was illegal, invalid; that the decision of the Pennsylvania court is in nowise binding upon this court or the tax commissioner of this state; that New Jersey has the right — and the sole right — to levy transfer inheritance tax upon the intangible personal estate; and that to that extent, and so far as that ground of appeal is concerned, the present tax must be affirmed.
There were two or three other grounds of appeal of minor importance, dealing with alleged errors by the tax commissioner in failing to allow certain amounts claimed to be deductible as debts or administration expenses. These have not been considered, for the reason that counsel on both sides stated that they thought those could be satisfactorily worked out and adjusted or agreed upon. If such adjustment or agreement has not been or cannot be made, these items will be adjudicated upon application on the usual notice. *Page 282