13 N.J. Super. 48 (1951)
80 A.2d 227
IN THE MATTER OF THE PROBATE OF THE ALLEGED LAST WILL AND TESTAMENT OF RAYMOND L. FISHER, DECEASED.
RAYMOND L. FISHER, JR., AND WILLIAM H. FISHER, EXECUTORS NAMED IN THE ALLEGED LAST WILL AND TESTAMENT OF RAYMOND L. FISHER, DECEASED, APPELLANTS,
v.
FLORA N. FISHER, CAVEATRIX, RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued December 11, 1950.
Decided April 10, 1951.
*50 Before Judges FREUND, PROCTOR and ROGERS.
Mr. Lewis S. Beers argued the cause for the appellants (Mr. Clarence W. Beers, attorney).
Mr. John H. Pursel, attorney for and of counsel with caveatrix-respondent.
*51 The opinion of the court was delivered by PROCTOR, J.S.C.
The decedent, Raymond L. Fisher, Sr., was born in 1890 in Phillipsburg, Warren County, New Jersey and lived there until about 1923, when he moved to Quakertown, Pennsylvania, where he remained until 1933. Returning then to New Jersey, he purchased and occupied a house in Bloomsbury, Hunterdon County. In September 1948, while living at the Bloomsbury home, he purchased two lots at Parkside, Warren County, adjacent to Phillipsburg, for the purpose of erecting a bungalow thereon at some future time. In July 1949 he married the caveatrix and they continued to reside in the Bloomsbury home until October 28, 1949, when he sold the house and most of the household goods. With the Bloomsbury house sold, the decedent and his wife looked for a place to live in Phillipsburg but were unsuccessful. They engaged a room in Easton, Pennsylvania, but due to its inadequacy were compelled to move within two days and thereafter rented one room in the home of a friend, Leo Weaver, at 1837 Washington Boulevard, Easton, Pennsylvania. The decedent and his wife ate their meals at various restaurants. They continued their search for suitable accommodations in Easton, its suburbs, and in Phillipsburg, but could find nothing satisfactory. Mrs. Fisher, the caveatrix, testified that they never intended the Weaver home to be anything more than a temporary residence.
While living in Easton, the decedent continued the rental of a post office box in Bloomsbury, where he received his mail until the time of his death. He had renewed the quarterly rental of the box on January 1, 1950. His automobile, which he took with him to Easton, carried New Jersey plates, and he had a New Jersey driver's license. On February 18, 1950, he renewed his New Jersey automobile registration as well as his New Jersey driver's license for 1950 through the motor vehicle agency at Phillipsburg, New Jersey, and gave as his address 53 Lehigh Avenue, Bloomsbury, Hunterdon County, New Jersey, the home which he had previously sold. While living with Mr. Weaver in Easton, he made application to join a local Republican Club as an associate member. It appears that an associate *52 member was entitled only to the social facilities of the club as distinguished from an active membership which was open to registered voters only. Decedent never became an associate member because the application was incomplete and was never acted upon.
While living at the Weaver home, Mr and Mrs. Fisher discussed the construction of a bungalow on the lots at Parkside with a building contractor, but sometime in February 1950 the decedent determined that the construction would be too costly, and he abandoned any further plans. In December 1949 decedent's mother had died and her home at 272 Mercer Street, Phillipsburg, was being offered for sale by the estate, of which he and his sister were executors. About March 3, 1950, he orally agreed with his sister that he would buy the home for $5,000 and asked her to make an appointment with the attorney for the estate to prepare the necessary papers. However, the appointment was not kept because the decedent fell ill and died on March 15, 1950.
Decedent's widow on March 27, 1950, filed a caveat with the Warren County surrogate against admitting any purported will of Raymond L. Fisher, Sr., to probate. Thereafter, the executors named in the will of decedent filed a complaint in the Warren County Court demanding judgment admitting the will to probate. The Warren County Court entered judgment denying probate of the will, stating that the court was "of the opinion that the said Raymond L. Fisher, Sr., at the time of his death, was not domiciled in Warren County, New Jersey, as asserted by the plaintiffs, nor in the Commonwealth of Pennsylvania, as claimed by caveatrix, but that his legal domicile was and continued in the County of Hunterdon, New Jersey." The judgment also allowed counsel fees to the attorneys for the respective parties to be paid from the estate of decedent.
The plaintiffs appeal upon the ground that the decedent at the time of his death was domiciled in Warren County. The caveatrix cross-appeals and contends that decedent at the time of his death was domiciled in Easton, Pennsylvania.
*53 It is conceded that from 1933 to October, 1949, decedent was domiciled in Bloomsbury, Hunterdon County, New Jersey.
It is well settled that a domicile once established continues until a new domicile is acquired. In re Dorrance, 115 N.J. Eq. 268, 274 (Prerog. 1934); affirmed, 13 N.J. Misc. 168 (Sup. Ct. 1935); affirmed, 116 N.J.L. 362 (E. & A. 1936); Watkinson v. Watkinson, 68 N.J. Eq. 632, 638 (E. & A. 1905); Cadwalader v. Howell, 18 N.J.L. 138, 144 (Sup. Ct. 1840); Clark v. Likens, 26 N.J.L. 207, 209 (Sup. Ct. 1857); Guggenheim v. Long Branch, 80 N.J.L. 246, 249 (Sup. Ct. 1910). It is also settled that to effect a change in domicile "* * * the residence at the place chosen for the domicile must be actual; to the factum of residence there must be added the animus manendi; * * *." Harral v. Harral, 39 N.J. Eq. 279, 285 (E. & A. 1884). In other words, in order to acquire a new domicile there must be a union of residence and intention. Residence without intention, or intention without residence, does not effect a change of domicile. See also Rinaldi v. Rinaldi, 94 N.J. Eq. 14, 20 (Ch. 1922); In re Gilbert, 18 N.J. Misc. 540, 548 (Essex Cty. Surr. Ct. 1940).
Applying the foregoing principles to the present case it is clear that decedent's domicile in Bloomsbury, Hunterdon County, New Jersey, continued until his death on March 15, 1950. After the establishment of his domicile in Bloomsbury a new domicile was not actually acquired animo et facto. In re Dorrance, supra; Watkinson v. Watkinson, supra. When the decedent lived in Easton, Pennsylvania, his intent was not to reside there permanently or indefinitely. Though it appears that he intended to establish a permanent home in Phillipsburg, Warren County, New Jersey, this intent was never carried out to the point of actual residence.
Plaintiffs argue that, since Warren County was the domicile of decedent's origin and Hunterdon County his domicile of choice, the domicile of origin reverted the moment the domicile of choice was abandoned. This is the English rule in regard to a change of domicile from one country to another. Udny v. Udny, L.R. 1 Sc. App. 441, 450, 457 (1869). It also appears *54 in several of our cases as dicta which may be epitomized in the following statement in Givernaud v. Variel, 86 N.J. Eq. 80, 86 (Ch. 1916); affirmed, sub nom. Plahn v. Variel, 87 N.J. Eq. 654 (E. & A. 1917):
"Every man, woman and child has a domicile of origin. He may, however, choose another domicile for himself, but if he abandons his domicile of choice without adopting another domicile in the manner prescribed by law, then his domicile of origin becomes his domicile."
Dean Alfred C. Clapp, author of a recognized treatise on probate matters in this State, when Deputy Surrogate of Essex County, criticized the above rule in his opinion in In re Gilbert, supra, at 551, as follows:
"But this rule is most unnatural in America and has nothing in public policy here to recommend it. The weight of authority in this country is contrary, and in accord with the holding here. That the Court of Errors has noted this trend of the law may be taken from its reference in Watkinson v. Watkinson, 68 N.J. Eq. 632 (at p. 638); 60 A. 931, to 10 Am. & Eng. Encycl. L. 15. Restatement, Conflict of Laws, § 23, comment (b); 1 Beale, Conflict of Laws, § 23.3."
The rule mentioned in the Givernaud case, if applied as plaintiffs contend, would reach the following result: A, originally from England, is domiciled in Hunterdon County. He abandons his Hunterdon County home to move to Warren County. If he dies on the journey, he dies domiciled in England. Such a holding would be contrary to the well established rule reiterated in In re Dorrance, supra, that there can be no loss of domicile until the acquirement of a new one. See also Desmare v. United States, 93 U.S. 605, 23 L.Ed. 959 (1876); In re Jones' Estate, 192 Iowa 78, 182 N.W. 227, 16 A.L.R. 1286 (Iowa Sup. Ct. 1921); Note, 40 L.R.A. (N.S.) 986 (1912). In the Restatement, Conflict of Laws, § 23 (b), it is stated:
"If a domicil of choice is abandoned without acquiring a new domicil of choice, the domicil of origin is not be revived but the last domicil of choice continues to be the domicil."
*55 Moreover, the rule of the revival of the domicile of origin does not apply when the domicile of origin and the domicile of choice, as in the present case, are both within the same state. First National Bank of New Haven v. Balcom, 35 Conn. 351 (1868); Succession of Steers, 47 La. Ann. 1551, 18 So. 503 (La. Sup. Ct. 1895). See also Story, Conflict of Laws, p. 40, note a, (8th ed. 1883); Dicey, Conflict of Laws, Domicile, p. 83, (6th ed. 1949); 1 Beale, Conflict of Laws, Domicile § 9.6 (1935). The argument is no stronger merely because the domicile the decedent intended to establish happened to correspond with his domicile of origin. See Hyder v. Hyder, 16 Tenn. App. 64, 66 S.W.2d 235 (Tenn. Ct. App. 1932).
Where the question of domicile is between counties within the State, the laws of succession and administration of the estate are the same. However, the statutory jurisdiction of the county court cannot be enlarged by that court nor by this court. The statute, R.S. 3:2-23, expressly limits the jurisdiction of the court to cases where the decedent resided in the county at the time of his death. Residence and domicile in this section are synonymous. Chadwick's Case, 80 N.J. Eq. 471 (E. & A. 1912); In re Simpson's Will, 136 N.J. Eq. 597 (Prerog. 1945). See also Stout v. Leonard, 37 N.J.L. 492, 495 (E. & A. 1874). Rule 3:100-1, which provides that venue in an action for the probate of a will shall be laid in the county "where the decedent had his domicile at his death," is not applicable to county courts. Rule 5:3-1. The intent and meaning of Rule 3:100-1, which is applicable to the Superior Court, and of the statute, R.S. 3:2-23, which is applicable to the county courts, are each to the same effect, and by Rule 5:4, governing practice in the surrogate's court, the form of complaint for the probate of a will there is the same as in the Superior Court. Rule 3:88-1(e) provides that the complaint shall state whether or not a caveat has been filed with the court or the surrogate of the county "where the decedent was domiciled at his death."
We conclude that, as the decedent was not domiciled in *56 Warren County at the time of his death, the Warren County Court was without jurisdiction to entertain probate of his will.
The court below allowed counsel fees to be paid out of the estate. As the court was without jurisdiction over the estate, we cannot sustain these allowances. In re Paullin, 92 N.J. Eq. 419 (E. & A. 1921). The judgment below is affirmed insofar as it determines that the Warren County Court was without jurisdiction to probate the will and is reversed insofar as it allows counsel fees. No costs.