

# THE ATTORNEY GENERAL

## OF TEXAS

### AUSTIN 11, TEXAS

WILL WILSON
ATTORNEY GENERAL

May 20, 1959

Honorable Robert S. Calvert        Opinion No. WW-626
Comptroller of Public Accounts
Capitol Station                    Re:  Classification for
Austin, Texas                           inheritance tax
                                        purposes of alleged
Dear Mr. Calvert:                       adopted child.

        You have requested that we advise you as to
whether Marian Jean Dooley Lee (hereafter referred to as
Marian) should be classified for inheritance tax purposes
under the provision of Article 7118--Class A, Vernon's
Civil Statutes, for a "legally adopted child. . .of the
decedent" or whether she should be classified under
Article 7122--Class E, V.C.S., which provides the appro-
priate class for all persons not specifically covered by
special classification provisions.

        On July 5, 1917, the New York Foundling Home
placed Marian who was then two and one-half years old in
the home of Leslie B. Dooley and his wife, Katherine Marie
Dooley (hereafter referred to as Decedent).  Marian re-
mained with the Dooleys until the time of her marriage.

        Prior to 1936, the Dooleys made no attempt to
adopt Marian but held her out to be an adopted daughter and
so considered her.  On December 2, 1936, Mr. Dooley and the
Decedent executed a deed of adoption which was duly acknowl-
edged and recorded and which stated that they by said in-
strument adopted Marian "a child of parents unknown to us,
now twenty years of age (and who has continually resided
with us since July 5, 1917) as our legal heir, hereby con-
ferring on said Marian Jean Dooley all the rights and privi-
leges, both in law and equity, appertaining to this act of
adoption for all purposes retroactive and to be effectual
from the 5th day of July, 1917."  The Dooleys were advised
by their attorney that upon filing of the deed of adoption
in the Deed Records of Dallas County, Texas, Marian had been
legally adopted by them.

        The Decedent died testate March 14, 1956.  Under
the terms of her will she devised certain properties to
Marian.  Throughout the will Marian was referred to as her
"foster daughter."

We will first consider whether under the above recited facts, Marian was the "legally adopted child" of the Decedent.

From the time the first adoption statute was enacted in Texas in 1850[1] until the Act of 1931[2] repealed all adoption laws then in effect, adoption was accomplished by the means of a written instrument, in the nature of a deed, which was signed by the adopting person and authenticated or acknowledged as deeds are required to be. The deed was required to be filed in the office of the county clerk, such filing being essential to the execution of the instrument and constituting the act of adoption. 1 Tex. Jur.Supp. 137, 138, Adoption, Secs. 15, 16. The Act of 1931 repealed all adoption laws then in effect and substituted as a complete method of adoption a radically different procedure. 1 Tex.Jur.Supp. 134, 135, Adoption, Sec. 8. The new act and its later amendments make the act of adoption a judicial function. 1 Tex.Jur.Supp. 141, Adoption, Sec. 21.

Various acts pertaining to the validation of adoptions have been passed by the Legislature. Acts 1934, 43rd Leg., 2nd C.S., p. 93, ch. 39, § 1; Acts 1937, 45th Leg., p. 1324, ch. 490, § 2; Acts 1947, 50th Leg., p. 1016, ch. 434, § 2; Acts 1951, 52nd Leg., p. 388, ch. 249, § 4.

However, these validation acts apply to adoption papers signed prior to August 21, 1931, and to adoption decrees theretofore entered by the District Court in Texas based on proceedings which conformed to the adoption statutes "as thereafter or hereby amended." Since the purported adoption deed in the instant case was executed at a time when the only method for accomplishing adoption was the judicial method, the deed itself amounts to a nullity, and there is nothing to validate. Therefore, at the date of the death of the Decedent, Marian was not her legally adopted child.

Subsequent to the Decedent's death, Marian instituted suit in the 101st Judicial District Court of Dallas County, Texas, for a declaratory judgment naming as defendants her foster father and all the heirs of the Decedent and next of kin of Mr. Dooley. In this suit, she sued to

---

[1] Pas. Dig. Art. 31.

[2] Acts 1931, 42nd Leg., p. 300, ch. 177.

have herself declared the adopted child of Mr. Dooley and the Decedent. Judgment was rendered in this suit on February 20, 1959. In the judgment the court made certain Findings of Fact and Conclusions of Law. Incorporated in the Findings of Fact are the facts previously stated. The court also found as a fact that Marian was "held out to be the adopted daughter" of the Decedent and her husband and that the "Deed of Adoption was intended to be merely a confirmation of their previous act of equitable adoption. . ."

The court concluded as a matter of law that "By such adoption procedure and by holding out to the world that the said Marian. . .was their adopted daughter, the said Leslie B. Dooley and his said wife have equitably adopted said Marian. . ." (Emphasis supplied throughout) However, the court further concluded that "The said Marian. . .is in legal effect the legally adopted child of Leslie B. Dooley and his said wife,. . .and was the legally adopted child of the said Katherine Marie Dooley and Leslie B. Dooley at the time of the death of the said Katherine Marie Dooley."

On the basis of its Findings of Fact and Conclusions of Law, the court decreed that certain questions contained in Plaintiff's Original Petition be answered in the following way.

Question (2) ". . .did not Leslie B. Dooley and his said wife in legal effect adopt Marian Jean Dooley Lee by their act of accepting custody of the said Marian. . .in considering and treating her always as their adopted daughter, and in holding out to the world that she was in fact their adopted daughter?" Yes.

Questions (3) and (4) pertained to the Dooley's intention in executing the adoption deed and the effect of such execution. The court concluded that in executing such papers the parties intended to confirm the previous act of adoption and that such was the effect of said execution.

In response to Question (5), the court concluded that Dooley and his wife intended to take Marian into their family and give her the rights, privileges and duties of a child and heir and that said child "in legal effect" had "the rights, privileges and duties of a child and heir."

In response to Questions (6) and (7), the judgment affirms the fact that Marian had been considered by all heirs and next of kin "to be in legal effect the legally adopted daughter of Leslie B. Dooley and his said wife" and that Marian "considered herself to be in legal effect the legally adopted daughter" of Dooley and his wife.

In response to Question (10), the court found that the attempted compliance with the adoption laws coupled with holding Marian out to the world as their adopted daughter was followed "by reliance thereon and performance thereto" by Marian.

In response to Question (11), the court stated that it would be inequitable for Dooley and his wife and their privies to deny the adoption of Marian and her status as an adopted daughter.

However, Question (12) reads as follows: "Is Marian Jean Dooley Lee in legal effect the legally adopted child of Leslie B. Dooley and his said wife?" The court answered this question in the affirmative.

We will now consider whether this judgment effectuates Class A classification for Marian. It is evident from the foregoing summation of the judgment that certain portions thereof are inconsistent. The judgment might well be construed as a decree that Marian was a child adopted by estoppel. On the other hand, the court's conclusion that Marian was the "legally" adopted child of Dooley and the Decedent is inconsistent with a decree of adoption by estoppel. A decree of adoption by estoppel establishes the property rights of the child adopted by estoppel in so far as the adoptive parents and their privies are concerned. Such decrees do not purport to change the status of a child adopted by estoppel. Since adoption was unknown to the common law, the status of an adopted child can only be created by compliance with the controlling adoption statutes. 1 Tex. Jur. Supp. 132, Adoption, Sec. 3. Thus if the judgment decrees that Marian was a child adopted by estoppel, she cannot be classified under the Class A provision for a "legally adopted child. . .of the decedent" in view of the per curiam opinion of the Supreme Court in Johnston v. Calvert, ____ Tex. ____, 305 S.W. 2d 778 (1957).

The Court of Civil Appeals in Calvert v. Johnston, 304 S.W. 2d 394 (1957), held that the alleged adopted son had failed to prove an adoption by estoppel and that he was therefore properly classified for inheritance tax purposes under Class E--Article 7122. Mr. Justice Hughes concurred solely on the ground that the alleged adopted child was not a "legally adopted child. . .of the decedent" within the meaning of Article 7118, Class A.

The Supreme Court refused the Application for Writ of Error with the notation, "no reversable error." We quote the Court's per curiam opinion which reads as follows:

> "We agree with the view expressed by
> Mr. Justice Hughes /304 S.W. 2d 398/ that
> Grant Lindsey, Jr. was not a 'legally
> adopted child' within the meaning of Arti-
> cle 7118, Class A, Vernon's Ann. Tex. Stats.
> See Wooster v. Iowa State Tax Commission,
> 230 Iowa 797, 298 N.W. 922, 141 A.L.R. 1298."

However, if the effect of the judgment of the court is to decree that Marian had been legally adopted and had the status of a legally adopted child of the Decedent, is the State bound by this decree to place Marian within the Class A classification for a "legally adopted child. . .of the decedent" for inheritance tax purposes?

As a general rule, a judgment determining personal status is conclusive in subsequent litigation involving the same issue. 50 C.J.S. 224, Judgments, Sec. 734. This is so because if a proceeding is designed primarily to determine status it is ordinarily a proceeding in rem and conclusive as a judgment in rem upon every person interested in or affected by the status thus adjudicated. 3 Freeman on Judgments (5th Ed., 1925) 3145, 3146, Sec. 1534. However, we quote the following excerpt from the above cited section of Freeman:

> ". . .But in order that such a proceeding shall be
> one in rem it is generally, if not always, neces-
> sary that it should contemplate and be intended to
> create or effect a change in the legal status of
> the person in question. It is not enough that sta-
> tus be incidentally, even though necessarily, passed
> upon in proceedings which are purely personal in
> their nature or which are in rem as to some other
> aspect of the status of such person. In other words,
> an adjudication which creates or changes legal status
> is in rem but one which finds or adjudicates the past
> or present existence of a particular status is not
> in that aspect a judgment in rem but must be treated
> like any other judgment inter partes."

Since it is evident that the judgment in the in-stant case did not purport to create or change Marian's legal status but rather was an adjudication of her past and pres-ent status, it is doubtful, to say the least, that it should be treated as a judgment in rem but rather it should be treated like any other judgment inter partes with the result that the State, not being a party, would not be bound.

Even if this distinction were not recognized, there is authority to the effect that "A judgment in rem, while

binding and conclusive on all private rights, does not conclude the State, its public agencies and mandatories, unless the law authorizing the proceedings contemplated such a result, since the State without its consent, express or implied, is not subject to suit."  3 Freeman on Judgments, 5th Ed., 1925, 3115, Sec. 1527; 1 Freeman on Judgments, 1088, 1089, Sec. 506; 26 Tex. Jur. 209, Judgments, Sec. 551.  It was suggested in Prairie Oil and Gas Co. v. State, 214 S.W. 363 (Tex.Civ.App. 1919), modified on other points (Com.App.), 231 S.W. 1088 (1921), that any statute which would make a judgment rendered in a suit to which the State was not a party binding upon the State would be violative of the due process clause provisions of both the State and Federal constitutions.

At least two courts have held that the State in collecting inheritance taxes is not bound by prior adjudications to which it was not a party.  In McDougald v. First Federal Trust Co., 199 P. 11 (Cal.Sup. 1921), the husband conveyed certain community property without the wife's consent.  After the husband's death the wife successfully sued to recover her community interest which under California law she obtained as the heir of the husband; therefore, the property in question was liable for an inheritance tax.  At page 12 the court said:

> "The right of the state of California to an inheritance tax was not litigated in  that proceeding, the state was not a party thereto, and the judgment in favor of the wife has no bearing upon the right of the state of California to recover an inheritance tax except as it shows that the widow has successfully maintained her right to succeed to the community property awarded to her by the judgment."

In Hasbrouck v. Martin, 183 A. 735 (Perogative Court of N.J. 1936), the decedent had made certain bank deposits and the ownership of the deposits was litigated after her death.  In suing to collect the inheritance taxes, the tax commissioner did not dispute the correctness of the judgment adjudicating title.  At page 737 the court said:

> "The State is of course not bound in this proceeding by the result in the chancery suit to which it was in nowise a party.  Cf.  In re Dorrance's Estate, 115 N.J. Eq. 268, at page 272, 170 A. 601; affirmed Dorrance v. Martin, 176 A. 902, 13 N.J. Misc. 168; In re Fischer's Estate, 118 N.J. Eq. 599, at page 605, 180 A. 633; Freudenrich v. Mayor, etc., Fairview, 114 N.J. Law, 290, 176 A. 162.

"It would therefore have been open to the commissioner in this tax proceeding to find, if the evidence before him so indicated, that no valid trusts had been created. He made no such finding, however, and makes no such contention on this appeal; he concedes that valid trusts were created; and the evidence in the record leads to the same conclusion."

For the reasons stated in these opinions as well as those heretofore given we are of the opinion that Marian cannot be given Class A classification as a "legally adopted child" of the Decedent. You are therefore advised that she must be classified for inheritance tax purposes under Class E.

## SUMMARY

Where a foster daughter of the Decedent was not adopted in accordance with the controlling adoption statutes, a judgment rendered subsequent to Decedent's death declaring said foster child to be the legally adopted child of the Decedent and Decedent's child adopted by estoppel does not bind the State in classifying the alleged adopted child for inheritance tax purposes. Said child cannot be classified under Article 7118, V.C.S., as a "legally adopted child. . .of the decedent" but must be classified under Article 7122, V.C.S.

Yours very truly,

WILL WILSON
Attorney General

MMP:bct

APPROVED:

OPINION COMMITTEE:
Geo. P. Blackburn, Chairman

William E. Allen
Henry G. Braswell
Lawrence Jones
Raymond V. Loftin, Jr.
J. Milton Richardson

REVIEWED FOR THE ATTORNEY GENERAL

By: W. V. Geppert

By Marietta McGregor Payne
Marietta McGregor Payne
Assistant