ROBERTSON *vs.* MCGEOCH.

The time allowed for appealing from a decree or order of a surrogate, commences running from the time of the actual entry of the decree or order.

Where one of several executors renounces the executorship, and letters testamentary are thereupon issued to the others, such executor, after the death of the other executors, may retract his renunciation as a matter of course.

But where all the executors renounce, and administration with the will annexed is actually granted, the executors cannot retract their renunciation, at least during the life of such administrator.

An executor, who has renounced his executorship, may retract his renunciation at any time before the granting of letters testamentary to the other executors, or the issuing of letters of administration with the will annexed.

THIS was an appeal, from the sentence and order of the surrogate of the county of Washington, directing that letters testamentary be granted to W. McGeoch, one of the executors named in the will of E. Cook, deceased. The respondent and J. Dobbin were named by the testator as his executors, and the appellant was one of his residuary legatees. On the 4th of October, 1843, both of the executors signed a renunciation of their right to letters testamentary, which renunciation was proved by the oath of a subscribing witness to the same ; and it was left with the surrogate to be filed and recorded when the will of the decedent should have been proved. The appellant thereupon caused the will to be proved before the surrogate, after having duly cited the heirs and next of kin. At the closing of the proofs, on the 30th of January, 1844, the respondent McGeoch delivered to the surrogate a written retraction of his former renunciation of the executorship, and consented to take out letters testamentary, and to execute the trust of executor. The appellant objected to the retraction, and claimed to have letters of administration with the will annexed granted to himself, or to some of the other residuary

legatees. The surrogate decided that the executor had a right to retract his renunciation and to take letters testamentary upon the estate, and he was accordingly sworn as executor. But upon an affidavit of Robertson, that he was advised by counsel that there were just and substantial objections to the granting of letters testamentary to McGeoch, as executor, the surrogate directed the proceedings to be stayed for thirty days. And the surrogate subsequently entered an order as of the 30th of January, 1844, allowing the proof of the will, and made a further order, as of that day, that McGeoch, who had formerly renounced the executorship, having, upon proof of the will, applied for leave to retract such renunciation, have leave to do so; but that Robertson having filed an affidavit setting forth his intention to file objections to granting such letters testamentary, and that he was advised and believed that there were just and substantial objections to the granting of such letters to McGeoch, the executor, it was further ordered that the order for granting such letters be stayed for thirty days. On the 28th of February, 1844, Robertson presented his objection in writing, to the surrogate, against granting of the letters testamentary to the respondent; which objection was that McGeoch had filed with the surrogate a written renunciation of the executorship, in due form. And the surrogate ordered that the granting of letters testamentary should be suspended until the 5th of March, 1844. On the last mentioned day, the order appealed from was entered by the surrogate, and Robertson immediately appealed therefrom.

*J. Rhoades,* for the appellant.

*M. Fairchild,* for the respondent.

THE CHANCELLOR. It does not appear in this case, except by inference, that there were any other residuary legatees of the testator; or that any person, who had any interest in the question arising on this appeal, appeared before the surrogate. The objection for want of proper parties to the appeal is not therefore well taken. And if the renunciation of the executor was peremptory, and could not be revoked, by permission of the sur-

rogate, before any action had taken place, founded upon such renunciation, which had altered the rights of the parties; the objection filed on the 28th of February, is a sufficient ground for reversing the order of the 5th of March, 1844, which directed letters testamentary to be issued notwithstanding such objection. It is true, the surrogate in fact decided the objection in favor of the respondent, on the 30th of January, when he held that the executor might be allowed to retract his renunciation of the executorship. But the order which was subsequently entered as of that time, contained no adjudication or direction that letters testamentary should issue to the executor. And even if it had contained such a direction, the time for appealing from that order had not expired on the 5th of March. For the time allowed for appealing, from a decree or order of a surrogate, does not commence running until such decree or order is entered. And from the surrogate's return, it is evident that the order entered as of the 30th of January, was not actually settled and entered, by the surrogate, previous to the 28th of February; as it recites the contents of an affidavit filed with the surrogate on the last mentioned day; which affidavit was sworn to in Troy only two days previous to that time. The only real question which requires consideration in this case, therefore, is whether it was competent for the surrogate to allow the respondent to retract, and to grant letters testamentary to him, notwithstanding his previous renunciation of the executorship.

It appears to be well settled that where there are several executors, and one of them renounces, and letters testamentary are thereupon issued to the others, he may retract, as a matter of course, after the death of the others; and may have letters testamentary granted to him. (9 *Coke's Rep., Fra. & Thomas'* ed., 66, note B. *Arnold* v. *Blencowe*, 1 *Cox's Ca.* 426. *House* v. *Lord Petrie*, 1 *Salk.* 311.) But where all the executors renounce, and administration with the will annexed has been actually granted, it is too late to retract the renunciation, at least during the life of the administrator. (*Toller's Law of Ex.* 422. *Rob. on Wills*, 171.) And in a recent case in England, it was held by the prerogative court of Canterbury, that where

Robertson *v.* McGeoch.

such administration had been granted, upon a renunciation by the executors, they could not retract such renunciation, even after the death of the administrator; as it might interfere with the rights of other parties to revive a chain of executorships, which had once been broken by the renunciation of the executors who formed one of the links in such chain. (3 *Addams' Eccl. Rep.* 273.) That objection, however, could not be urged in this state, since the adoption of the revised statutes; which have taken away the right of an executor of an executor to administer the estate of the original testator.

In England, the executor may be permitted to retract his renunciation at any time before other parties have acquired rights, by the action of the probate court upon such renunciation. In the case of *The King* v. *Simpson*, (1 *Wm. Black. Rep.* 456; 3 *Burr. Rep.* 1463, *S. C.*) the question was discussed, upon an application for a mandamus to compel the judge of the prerogative court to allow an executor to retract; but it was not decided, because there was a compromise between the parties litigant. But in *Thompson* v. *Dixon*, (3 *Addams' Rep.* 272,) Sir John Nicholl, the judge of the prerogative court of Canterbury, allowed an executor who had formally renounced, for the purpose of being examined as a witness, to retract his renunciation and to take out letters testamentary upon the will of the testator. And in *McDonnell* v. *Prendergast*, (3 *Hag. Eccl. Rep.* 212,) the same learned civilian decided, that an executor who had renounced, had a right to retract his renunciation, at any time before the grant of administration with the will annexed. And similar decisions are referred to in that case, as having been made by the same ecclesiastical court, in 1717 and 1741. (*See also Hayward* v. *Dale, Lee's Eccl. Ca.* 333, *which is cited in Rex* v. *Simpson.*) Such appears therefore to have been the law in England, even previous to the revolution. And there is nothing in the provisions of the revised statutes which is inconsistent with the decisions referred to; although the form in which a renunciation shall be made, and authenticated and preserved, was expressly provided for in the revision of 1830.

The order appealed from is therefore affirmed, with costs.