ESSEX COUNTY SURROGATE'S COURT.

IN THE MATTER OF THE ESTATE OF ALEXANDER HORVATH, DECEASED.

Decided October 9, 1941.

For the petitioner, *John Trier*.

For the respondents, *Kapp Brothers* (*Herman W. Kapp*, of counsel).

CLAPP, Deputy Surrogate. By the will of Alexander Horvath, Helen Kahl and Thomas Hickey were nominated to be or constituted his executors. She renounced on counsel's advice that a conflict would spring up between her individual interest and her interest as an executor; and the surrogate ordered letters issued to Mr. Hickey. He, after qualifying and entering upon the duties of his office, died July 17th, 1941. Alleging his death and the termination of the conflict in her interest (the conflict was allegedly resolved by the suit of *Hickey* v. *Kahl*, 129 *N. J. Eq.* 233; 19 *Atl. Rep.* (*2d*) 33), she now applies to the surrogate to open his order so as to permit her to retract her renunciation and so as to grant her letters of executorship.

Her sisters, the residuary legatees, dispute her right to letters. The Essex County Orphans Court has held itself without jurisdiction of a controversy solely over a right to letters of executorship because of the pointed failure of the statute, now *R. S.* 3:2-22; *N. J. S. A.* 3:2-22, to confer that jurisdiction on that court. *In re Will of Best,* 34 *N. J. L. J.*

338. However, whether such jurisdiction then lies in this court (*Cf. Russell's Case,* 64 *N. J. Eq.* 313; 53 *Atl. Rep.* 169) and whether this court's jurisdiction, once deemed exhausted by the first grant of letters, has been recharged by *R. S.* 2:31-4; *N. J. S. A.* 2:31-4 sufficiently to grant the application here (*Cf. Ryno's Ex.* v. *Ryno's Admr.,* 27 *N. J. Eq.* 522; *Mellor* v. *Kaighn,* 89 *N. J. L.* 543; 99 *Atl. Rep.* 207; *Jewett* v. *Turner,* 172 *Mass.* 496; *Briggs* v. *Probate Court,* 23 *R. I.* 125) are questions that should be passed over, for the decision here is that the application must on another ground be dismissed.

I have been furnished with excellent briefs on the question whether letters may now be granted Mrs. Kahl, as that question would have been answered at common law; but the answer, in my view, turns on language put in *R. S.* 3:7-61 and 3:7-69 by the revisers in 1937. *N. J. S. A.* 3:7-61 and 3:7-69.

To appreciate the constructional problem, one must have in mind the most that can be said for the common law rule. Assume it to be, as petitioner's argument has it, that at common law one of two executors who has renounced may, on the death of his co-executor and before the grant of administration, retract his renunciation and have letters of executorship issued to him. *In re Maxwell,* 3 *N. J. Eq.* 611; *Hill* v. *Smalley,* 25 *N. J. L.* 374; *Judson* v. *Gibbons,* 5 *Wend.* 224; *Robertson* v. *McGeoch,* 11 *Paige* 640; *John Dempsey's Will,* 1 *Tuck.* 51; *Codding* v. *Newman,* 3 *Thomp. & C.* (*N. Y.*) 364; 63 *N. Y.* 639; *Perry* v. *DeWolf,* 2 *R. I.* 103; *Davis* v. *Inscoe,* 84 *N. C.* 396.

The policy of these authorities, as it has been presented on the argument, is to have the will executed by the person chosen by its terms—provided he be willing to act and no inconsistent rights have supervened—and not executed by (the authorities are old) an executor of an executor or an administrator *de bonis non cum testamento annexo* of inefficient (*Preamble, Pamph. L.* 1901, *ch.* 145) powers. The more cogent is this policy made to appear when the ground of the renunciation was that it was more efficient to have but one executor.

The ecclesiastical authorities though at first regarding a renunciation as peremptory, that is, as irrevocable (see Webster's New International Dictionary), later permitted retractions under liberal circumstances. *Lord Petrie's Case,* 1 *Salk* 311; *Venables* v. *East India Co.,* 2 *Ex.* 633; 154 *Eng. Rep.* 644. On respondent's behalf it is to be remarked that a result, such as that reached by the early civil authorities, was pronounced the more reasonable one and was itself reached upon a construction of a Canadian statute (*C. S. U. C., ch.* 16, § 1). *Allen* v. *Parke,* 17 *U. C. C. P.* 105. On the other hand, in construing the words of an exactly similar statute theretofore enacted in England (20 & 21 *Vict., ch.* 77, now 15 *Geo. 5, ch.* 23) the tenacious common law rule was held to have survived the statutory words (though it must be said, its escape therefrom was narrow) to permit the retraction argued for here—at least, if the retraction were to the benefit of the estate. *In the Goods of Stiles* (1898), *Pac. Rep.* 12; *In re Gill, L. R.* 3 *P. & D.* 113. The durableness of the policy supporting the common law rule is again to be observed in the New York Surrogate's Court Act, section 158, codifying the rule—at least to permit of a retraction in the case here, within the Surrogate's discretion. *In re Kellogg,* 214 *N. Y.* 460.

With this for an historical background, the revisers drafted *R. S.* 3 :7-61; *N. J. S. A.* 3 :7-61. It provides (by the italics, attention is called to noteworthy changes from the pre-existing statute) :

"When a sole or *sole* surviving *or remaining* executor * * * dies or is removed * * * after *qualifying and entering upon the duties of his office but before the completion thereof, the vacancy so created shall* * * * be filled by the appointment of a fit person to exercise the vacated office, such person to be denominated substituted administrator with the will annexed. * * *

"The appointment *shall* be made by the issuance of letters of substitutionary administration with * * * the will annexed * * * by the Surrogate of the proper county. * * * in the manner and upon the conditions prescribed for granting letters of administration to the first administrators in other cases."

It will be perceived upon a comparison of *R. S.* 3:7-61, 3:7-63 and 3:7-69; *N. J. S. A.* 3:7-61, 63 and 69, with the prior statutes, that the revisers were there cutting much new verbal cloth. *R. S.* 3:7-63; *N. J. S. A.* 3:7-63, where they patterned a provision as to guardianships after that conceived as to executorships, was amended by *Pamph. L.* 1941, *ch.* 323, to return the law in some respects to its pre-existing state.

This opinion turns in its argument first to the words "shall" in *R. S.* 3:7-61; *N. J. S. A.* 3:7-61, then to the applicability here of the words of that section "sole or sole * * * remaining" and finally to *R. S.* 3:7-69; *N. J. S. A.* 3:7-69.

The provisions of the Revised Statutes affecting the question at bar stand out in contrast to the prior statute affecting the same. The common law rule, as argued for by applicant here, plainly may be reconcilable with that statute. That statute did not *require* the appointment of a substituted administrator *cum testamento annexo* on the death of a sole or surviving executor; the statute permitted it. In place of the word "shall" in *R. S.* 3:7-61; *N. J. S. A.* 3:7-61, the word "may" appeared in *Pamph. L.* 1901, *ch.* 145, § 1. Most important is it to observe that the word "may" there. superseded the word "shall" appearing in *Pamph. L.* 1897, *ch.* 104, and again appearing in *Pamph. L.* 1898, *ch.* 234, § 151. I regard the word "shall" in the present statute as imperative. I see nothing of sufficient force in the character or context of *R. S.* 3:7-61 or 3:7-69; *N. J. S. A.* 3:7-61 and 69, which will permit me to wrench the word out of its ordinary significance so as to render it directory. *Foley* v. *Orange,* 91 *N. J. L.* 554; 103 *Atl. Rep.* 743. Notwithstanding that there may be much to be said for the alleged common law rule, I do not think I am at liberty to disregard the action of the revisers in replacing the word "may."

Before turning attention away from *R. S.* 3:7-61; *N. J. S. A.* 3:7-61, it may be asked whether Mr. Hickey was the "sole or sole remaining" executor, within the meaning of the statute. This is no occasion to consider whether *Pamph. L.* 1939, *ch.* 139 (effective before the date of the decedent's

death) amending *R. S.* 3:2-3; *N. J. S. A.* 3:2-3, by making probate a condition precedent to the validity of a will, abrogated the common law rule so that from thenceforth an executor derived his title not from the will but from the probate. 62 *N. J. L. J.* 389 and 390. If a probate decree is the *sine qua non* of an executor's power, then Mr. Hickey may have been the "sole" executor.

On the other hand, if Mr. Hickey derived his title from the will and not from the probate, he is to be regarded as the "sole remaining executor" after Mrs. Kahl's renunciation; for after her renunciation, she did not *remain* an executor. The notion of the early common law was, perhaps, to regard a renunciation as a disclaimer, not of the executor's title and office, but merely of his right to authenticate that title by probate. But to-day renunciations are made doubtless without exception, as disclaimers of the title and office. *Venables* v. *East India Co.,* 2 *Ex.* 633; 154 *Eng. Rep.* 644, *supra;* *Cf. Rinehart* v. *Rinehart,* 15 *N. J. Eq.* 44; *R. S.* 3:13-1; *N. J. S. A.* 3:13-1. Without question, an executorship and all its burdens, rights and powers may be renounced; and Mrs. Kahl's disclaimer here is to be so construed. Assuming then that she was once an executor, my conclusion is that she did not remain such. On that assumption, Mr. Hickey was at his death the sole remaining executor.

By the hand of the revisers the words "or remaining" came into the law in the place they stand. In *Pamph. L.* 1898, *ch.* 234, § 151, the words "remaining executor" refer to the co-executor remaining after another's removal. But the words obviously are also referent to a co-executor remaining after another's "refusal to act," or after another is "disabled to act." *Cf.* the use of the words "remaining executor" in the case of *Lippincott* v. *Wikoff,* 54 *N. J. Eq.* 107, 114; 33 *Atl. Rep.* 305, and *Cf. R. S.* 3:7-69; *N. J. S. A.* 3:7-69.

The legislative intent that there shall be substitutionary administration in a situation such as the one at bar, is elsewhere apparent. *R. S.* 3:7-69; *N. J. S. A.* 3-7-69 provides that there shall be survivorship and succession between co-fiduciaries; and a co-fiduciary is defined by *R. S.* 3:6-1; *N. J. S. A.* 3:6-1 as one of two fiduciaries jointly "serving"

in a fiduciary capacity. The indication (insufficient though it would be of itself) is that there is survivorship and succession *only* between co-fiduciaries jointly *serving*.

Notice, too, may be taken of the subsequent provision of *R. S.* 3:7-69; *N. J. S. A.* 3:7-69—that if there "remains at least one fiduciary qualified to act, no substituted fiduciary need be appointed to act in the place of any co-fiduciary who may have died," &c. This language is entirely the revisers'. By *R. S.* 3:7-69; *N. J. S. A.* 3:7-69 the implication is cast that a substituted fiduciary—that is, a substituted administrator *cum testamento annexo* not an executor—*need* or must be appointed where, *e. g.*, one of two jointly serving fiduciaries dies and then the other dies. The word "need" re-enforces the mandatory construction given to the word "shall" in *R. S.* 3:7-61; *N. J. S. A.* 3:7-61.

In view of the statutory language the petition herein must be dismissed.